## BANK OF HOLLY GROVE *v.* SUDBURY.

### Opinion delivered November 15, 1915.

BILLS AND NOTES—STIPULATION FOR ATTORNEY'S FEES—VALIDITY—NEGOTIABLE INSTRUMENTS LAW.—A provision in a promissory note for the payment of an attorney's fee, does not affect the negotiability of the note, but such provision is unenforcible, and the Negotiable Instruments Act (Act 81, p. 260, Acts 1913), does not make it enforcible.

Appeal from Mississippi Circuit Court, Chickasawba District; *J. F. Gautney,* Judge; affirmed.

*Hope, Seibert & Reeder, Hawthorne & Hawthorne* and *D. K. Hawthorne,* for appellant.

1. Before the passage of the act of 1913, this court has held that a stipulation to pay an attorney's fee was invalid. 96 Ark. 105; 63 *Id.* 225. But since the passage of that act the stipulation is valid and should be enforced. Acts 1913, p. 270; 77 S. E. 468; 6 Leigh (33 Va.) 517; 85 Va. 621; 8 S. E. 483; 168 S. W. 796; 82 S. E. 332; 97 N. E. 372; 135 Pac. 454; 104 Ark. 500; 111 *Id.* 123; 53 *Id.* 545; 113 Ark. 555.

*A. G. Little,* for appellee.

1. Before the passage of the act the stipulation was held invalid. 42 Ark. 167; 63 *Id.* 225; 96 *Id.* 105. The act of 1913 has not changed the law. The Legislature is presumed to have acted with full knowledge of this established policy. If it intended a change it would have said so. It only said that such a stipulation did not destroy the negotiability of the note. 35 Ark. 146; 41 *Id.* 242; 96 *Id.* 105.

SMITH, J. This was a suit on a note which contained a provision for the collection of an attorney's fee if the note was not paid without suit, and the validity of this provision is the only question involved in this litigation.

It is conceded, of course, that this provision was invalid prior to the enactment of the negotiable instruments law in this State. Act No. 81, Acts 1913, p. 260. The note sued on was executed after the above named act became effective.

It is urged that the effect of the passage of this act is to change the declared policy of this State on this question.

Section 1 of this act declares the essentials of negotiability. Section 2 of the act defines the term "sum certain," as used in the first section of the act, as the sum payable, although the note may contain any one of the provisions set out in the second section, among which provisions is the following: "With cost of collection or an attorney's fee in case payment shall not be made at maturity."

And it is pointed out that the provisions of section 5 of the act are as follows: "An instrument which contains an order or promise to do an act in addition to the payment of money is not negotiable." But certain exceptions to this general statement are noted in that section, after which follows the statement: "But nothing in this section shall validate any provision or stipulation otherwise illegal."

And it is argued that as the purpose of the act was to make uniform the law of commercial paper, and as the uniform negotiable instruments law has been adopted by forty or more of the States of the Union, in most of which the provision for an attorney's fee is held enforceable, that the adoption of the law in this State signifies an intention on the part of the Legislature to change the policy of this State, as declared in the decisions of this court prior to the enactment of this law.

It is competent, of course, for the Legislature to declare the policy of this State, or to change this policy as recognized by the courts, and the question here is whether or not this act accomplishes that purpose.

There is no doubt as to the policy of this State on this question prior to the enactment of this law. In the case of *Boozer* v. *Anderson,* 42 Ark. 167, it was said that the provision for the payment of an attorney's fee was an agreement for a penalty, and that the courts of this State would not enforce it. This holding was reaffirmed in the case of *Benton* v. *Holliday,* 44 Ark. 60, and *Chaffe*

*& Sons* v. *Landers,* 46 Ark. 371. It is true that this court
in the case of *Jarvis* v. *Southern Grocery Co.,* 63 Ark. 225,
when again called upon to reconsider its previous hold-
ings on the question, said:

"It is but fair to say that, were it a new question, we
would not be agreed as to the doctrine of the validity of
such a stipulation, either in a note or a mortgage, but the
majority stands on the previous decisions of this court as
to the stipulation in the note, while all of us agree that the
rule is to be applied to the stipulation in the mortgage the
same as to the stipulation in the note."

And the court refused to allow the attorney's fee
there provided for.

This holding has been reaffirmed in the subsequent
cases of *Arden Lumber Co.* v. *Henderson Iron Works,* 83
Ark. 244, and *White-Wilson-Drew Co.,* v. *Egelhoff,* 96
Ark. 105. In the case of *Arden Lumber Co.* v. *Henderson
Iron Works, supra,* this court refused to enforce a stipu-
lation for an attorney's fee in a note payable in a State
where that provision was enforceable, upon the ground
that comity did not compel us to enforce contracts which
contravene the policy of our own laws.

It thus appears that the policy of this State was
thoroughly well fixed at the time of the enactment of this
law. This negotiable instruments law is a very compre-
hensive one, and its history is well known. In enacting it,
the Legislature manifested its intention to legislate in a
very comprehensive way on this subject, and having this
purpose it is not to be assumed that the Legislature in-
tended by mere implication to change the policy of this
State, unless the act itself accomplishes that purpose.
We find no language in the act which leads to that con-
clusion. Subdivision 5 of section 2 set out above does
not accomplish that purpose. Its effect is to declare that
the provision contained in a note for the collection of an
attorney's fee, when read in connection with section 1,
does not affect the negotiability of the instrument. But
this worked no change in our law, for, notwithstanding
this provision had been held unenforceable, it had also

been held that it did not affect the negotiability of the note. *White-Wilson-Drew* v. *Egelhoff, supra,* and cases there cited.

Section 5 of the act deals also with the question of negotiability, and the proviso above quoted, "But nothing in this section shall validate any provision or stipulation otherwise illegal," gives no support to appellant's contention. The proviso, by its terms, applies only to the provisions of section 5, all of which relate to the question of negotiability. Upon the contrary, we think this proviso tends to show that the Legislature did not contemplate any change in the general policy of the State by validating any provision, or stipulation, otherwise illegal in the effort there made to add to the negotiability of commercial paper.

There is an extended note to the case of *Raleigh County Bank* v. *J. H. Poteet,* 54 L. R. A. (N. S.) 928. The note to this case contains a general review of the decisions of all the States upon this subject, and contains a statement of the reasons given by the various courts in upholding, and in rejecting the provision for the payment of an attorney's fee. The decision in the case to which the note is appended was by the Supreme Court of West Virginia. That court was called upon to pass upon the validity of this provision. The majority of that court held that the provision was invalid, although there was a dissenting opinion in which two of the justices concurred. It is pointed out, however, in both the majority and the minority opinions in that case that the uniform negotiable instruments act had been passed by the Legislature of that State before the execution of the note there sued upon, and it was not contended in either opinion that the act itself should control the court upon that question. Speaking for the majority of the court, Mr. Justice Poffenbarger said:

"The negotiable instruments law (chapter 81, Acts 1907; chapter 98A of the Code) has not altered this policy. Negotiability of paper is one thing, and the policy of the State as to usury and other oppressive practices quite an-

other, and that statute deals with the former, not the latter. It says not a word about usury. Its purpose was to establish uniformity in the quality, characteristics, and incidents of negotiable paper, and to extend the principle of negotiability; but it assumed the validity of the paper contemplated. In other words, it assumed the paper to be such as the law permits the parties to make and allows the courts to enforce. No rule or principle of construction justifies the courts in saying its very general terms repeal positive statutes relating to subjects other than negotiability of valid paper. On the contrary, the rules of construction forbid it.''

In the minority opinion, it was said:

''The uniform negotiable instruments law adopted in this State and in most of the other States recognizes the validity of such contracts, and specifically provides that they shall not render instruments uncertain or destroy their negotiability. It seems to me these laws are entitled to some consideration in this connection. The reason noted in some of the decisions why instruments bearing such stipulations are not rendered uncertain and nonnegotiable is that they in no way affect the sum certain to be paid at maturity, the obligation of the contract maturing subsequently to the date of the maturity of the instrument.''

As pointed out in this dissenting opinion, this uniform negotiable instruments law recognized the validity of the contract for the payment of an attorney's fee, and specifically provided that it shall not render instruments uncertain or destroy their negotiability. But as has been said, we had previously held such provision invalid but that it did not render uncertain the sum payable, nor destroy the negotiability of an instrument containing that provision.

If the enactment of this law in West Virginia, before that State had declared its policy on this question, did not operate to uphold the validity of this provision, then certainly the enactment of the law in this State after the State's policy had become firmly fixed could not operate

to accomplish that purpose. We are constrained to believe that had any such purpose been entertained by the Legislature, it would have been made manifest, and as we find nothing in the act inconsistent with our previous declaration of the State's policy, we hold that it remains unchanged by the act, and the provision in the note is void and the judgment will be affirmed.