FEDERAL LAND BANK OF ST. LOUIS *v.* CRAIG.

Opinion delivered February 27, 1928.

1. MORTGAGES—EFFECT OF PAYMENT TO MORTGAGEE'S AGENT.—In a suit to foreclose a prior mortgage, payment by the tenant, renting the premises, of the rent money to mortgagee's agent to be applied on the mortgage, in accordance with an agreement between the tenant and the landlord, who held the premises as purchaser at foreclosure sale under a subsequent deed of trust, *held* an absolute payment, and the owner of the premises and the subsequent incumbrancer were entitled to receive credit for the amount paid on the indebtedness, notwithstanding the fact that the mortgagee's agent had never transmitted the money to mortgagee, but had subsequently paid it over for private purposes of the tenant under the tenant's order.

2. MORTGAGES—APPLICATION OF CREDIT.—A mortgagee in a foreclosure suit is not required to credit on the mortgage indebtedness money paid over to his agent by the tenant on the premises, to be applied to his mortgage indebtedness, where the money was in addition to the rent which the tenant had agreed to pay the landlord holding under a subsequent trust deed, and where the mortgagee's agent, instead of applying the money to payment of the mortgage indebtedness, used it for a private purpose of the tenant in accordance with the tenant's request.

3. MORTGAGES—PROVISION FOR ATTORNEY'S FEE IN FORECLOSURE.—A provision in a mortgage that, in case of default, the mortgagor should pay such reasonable attorney's fees as might be allowed by law, is void and unenforceable in a foreclosure suit as constituting an agreement for a penalty.

4. BANKS AND BANKING—REFUSAL TO TAX ATTORNEY'S FEE IN FORE-CLOSURE SUIT.—In a foreclosure suit by a Federal Land Bank, a refusal to allow an attorney's fee to be taxed as costs was not an abuse of discretion, where the rights of subsequent mortgagees were involved and plaintiff claimed an additional amount, even if Acts 1924, p. 72, permitting allowance of reasonable attorney's fee in suits to foreclose deeds of trust given Federal loan banks, was applicable.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens,* Chancellor; reversed.

STATEMENT OF FACTS.

Appellant brought this suit in equity against appellees to foreclose a mortgage on a tract of land in Union County, Arkansas, containing 200 acres, more or less, to secure an indebtedness of $1,000 in the form of a prom-

issory note. The complaint alleges that the sum of $959.19 was due and unpaid on said note, and that, under the terms of the mortgage, it was entitled to recover judgment against the mortgagor and have a foreclosure of the mortgage for taxes and the amount paid for a supplemental abstract of title to the land.

The mortgage was executed on the 17th day of December, 1917, by Jesse J. Craig and Corinne Craig, his wife. On May 6, 1920, Jesse J. Craig and Corinne Craig, by warranty deed, conveyed said lands to appellee, Robert Scott. On October 13, 1921, Robert Scott and his wife conveyed said land by deed of trust to W. E. Patterson to secure an indebtedness to the Citizens' National Bank of El Dorado. On March 1, 1922, Robert Scott and his wife conveyed said land by deed of trust to B. A. Hancock to secure an indebtedness to J. L. Kinard. The deed of trust executed to W. E. Patterson, trustee, was foreclosed by the trustee under the power of sale, and the land was sold under it on April 8, 1924, to J. L. Kinard. J. L. Kinard rented the land to Robert Scott for the year 1925 for $150. It was agreed between Kinard and Scott that the rent should be paid by Scott to W. B. Brown, secretary of the El Dorado National Farm Loan Association, to be applied on the mortgage indebtedness to appellant. Scott paid to Brown the $150 rent for the purpose of being applied towards the mortgage executed by the Craigs to appellant. In addition, Scott borrowed $278.53 from a third person and paid it to Brown, to be also applied towards the satisfaction of the mortgage to appellant. This made a total of $428.53 paid by Scott to Brown to be applied to the satisfaction of appellant's mortgage. Brown never sent the money to appellant at St. Louis; and on March 11, 1926, Scott gave Brown an order to pay said money to Stewart & Oliver, attorneys, at El Dorado, Arkansas, who had been employed by him to defend his son in a murder case. Brown paid the $428.53 to Stewart & Oliver on the order of Robert Scott. The record shows that Brown, as secretary of the El Dorado National Farm Loan Association,

had the authority to receive payments to be applied towards the satisfaction of the mortgage of appellant.

The chancellor found that W. B. Brown was, on December 31, 1925, the agent of appellant, and that payment to him by Scott of the $428.53 was payment upon the note and mortgage of appellant, and that the same should be allowed as a credit thereon. A judgment of foreclosure was entered of record for the balance due appellant, in accordance with findings of the chancellor. The case is here on appeal.

*Stewart & Oliver* and *J. R. Crocker,* for appellant.

*Mahony, Yocum & Saye,* for appellee.

HART, C. J., (after stating the facts). The record shows that appellant, Federal Land Bank of St. Louis, Missouri, and the El Dorado National Farm Loan Association of El Dorado, Arkansas, are both incorporated under an act of Congress of the United States, but that they are separate and distinct corporations. The loan by appellant to Craig was obtained by Brown, as secretary of the El Dorado National Farm Loan Association; and, without reciting the evidence in detail, we are of the opinion that the chancellor was justified in holding that Brown, as secretary of said association, was authorized to receive payment on the mortgage indebtedness of the Craigs to appellant. Brown acted for appellant throughout in securing the loan and in paying over the amount of it to the Craigs and in applying the amount borrowed to the satisfaction of their debts.

The evidence also shows that, under the circumstances, Brown, as secretary of said association, was authorized to receive payments on the mortgage indebtedness for the purpose of transmitting the same to appellant. After giving the mortgage to appellant, the Craigs conveyed the land to Robert Scott, and he, in turn, executed a deed of trust on it to secure an indebtedness of his own. The deed of trust was foreclosed, and J. L. Kinard became the purchaser under it, and took possession of the land. He rented it to Robert Scott, whose mortgage had been foreclosed, for the year 1925, for

the sum of $150. Kinard and Scott recognized that appellant had a prior mortgage on the land, and it was agreed between them that, instead of paying the $150 rent to Kinard, Scott should pay it to Brown, to be applied in satisfaction of the mortgage of the Craigs to appellant. Scott also borrowed $278.53, which he paid to Brown to be so applied to the payment of the mortgage of appellant. This made a total of $428.53 which was paid by Scott to Brown for that purpose.

The chancellor held that Brown, as agent of appellant, had the right to receive the $428.53 to be applied towards the satisfaction of appellant's mortgage, and that, after Scott had paid that sum to Brown, the payment became absolute, and that the order subsequently given by Scott to Brown to pay the money to Stewart & Oliver was of no avail.

The chancellor was right in so holding as to the $150. Scott owed Kinard this amount as rent, and it was agreed between Kinard and Scott that Scott, instead of paying Kinard, should pay the rent to Brown, to be applied towards the satisfaction of the Craig mortgage to appellant. When Scott paid this sum to Brown, as agent for appellant, it constituted an absolute payment, which could not be returned. To illustrate, suppose Kinard had wished to recall the transaction and have Scott pay the rent to him. Brown, as agent of appellant, could have refused to do this, and, inasmuch as Kinard, under his contract with Scott, had a vested interest in the matter, Brown, after receiving the payment from Scott, could not, to the detriment of Kinard, return the money to Scott to be used by him for his own private purpose.

The case as to the $278.53, however, is entirely different. Scott borrowed the money from a third person, and Kinard had no interest whatever in the transaction. So long as the money had not been actually applied to the payment of the mortgage indebtedness, Scott had a right, by agreement with Brown, to receive the money back and use it for his own private purpose. Until the money had been actually applied to the payment of the mortgage indebtedness, the parties could rescind the

transaction, and the money could be paid back to Scott without in any manner interfering with the rights of Kinard. If Scott had sent the money in a letter direct to appellant, and, before appellant had received the money and applied it to the payment of the mortgage indebtedness, had asked that the money be returned to be used by him in employing attorneys to defend his son for murder, and appellant had done so, this would have constituted a new agreement between appellant and Scott, and would have in no wise affected the mortgage, because no payment had been actually received and applied towards the satisfaction of the mortgage by appellant. Scott could not complain, because appellant had done exactly what he asked it to do in the matter. Kinard could not complain, because he had no interest in the matter whatever. It was no concern of his whether Scott ever made a payment on the mortgage of appellant or not. He could only claim any right or interest in the matter when such payment had been actually received by appellant and applied by it towards the satisfaction of the mortgage.

The result of our views is that the chancellor should have held that the $150 owed by Scott to Kinard and paid by Scott to Brown constituted an absolute payment on the mortgage, but that the chancellor erred in so holding as to the $278.53 which Scott had borrowed and paid to Brown as agent of appellant.

It is next contended that the decree should be reversed because the chancery court refused to allow appellant a reasonable attorney fee. In the first place, it is contended that the allowance should have been made because the mortgage contained a clause providing that, if default be made in its payment, in addition to his payment of the indebtedness, the mortgagor should also pay such reasonable attorney fee as might be allowed by law. This court has held that the insertion in a note of the stipulation of an attorney fee and costs for the collection of the note does not destroy the negotiable character of the instrument, but such stipulation is void and not

enforceable, because it is an agreement for a penalty, even though it would be enforceable in the State in which it was executed. *Bank of Holly Grove* v. *Sudburry,* 121 Ark. 59, 180 S. W. 470, Ann. Cas. 1917D, 373; *Arden Lumber Co.* v. *Henderson Iron Works & Supply Co.,* 83 Ark. 240, 103 S. W. 185; *White-Wilson-Drew Co.* v. *Egelhoff,* 96 Ark. 105, 131 S. W. 208; and *Boozer* v. *Anderson,* 42 Ark. 167.

Again, it is insisted that the attorney's fee should have been allowed under the provisions of an act regulating the foreclosure of deeds of trust given to Federal Farm Loan banks. Acts of 1924, special session, page 72. The act provides that, where the amount involved is $200 or more and the interest is 7 per cent. or less, the court trying the case may, at its option, allow a reasonable attorney's fee to be taxed as costs in the case. The act has a proviso which says that it should apply only to loans made under the Federal Loan Act. Without deciding the question, we are of the opinion that, even if the act be held valid, the chancery court did not abuse its discretion in refusing to allow an attorney fee to be taxed as costs in the case. As we have already seen, the rights of subsequent 'mortgagees were involved in the action, and the contest was really between them and the appellant as the holder of the first mortgage. Appellant was claiming, among other things, to have a right to enforce its lien for $224 abstract fees. The court held against it, and it is not now claimed that the holding of the court was erroneous. As we have already seen, appellant was contending that it had a right to enforce its mortgage against the $150 rent which had been paid its agent to be applied on the mortgage, and which it had not so applied. Under these circumstances it was a matter of discretion, in any event, whether or not the chancellor should allow an attorney's fee under the act, even if valid.

It follows that the decree must be reversed, and the cause will be remanded with directions for further proceedings in accordance with the principles of equity and not inconsistent with this opinion. The costs of the appeal will be taxed against appellees.