MERCANTILE-COMMERCE BANK & TRUST CO. et al. v. SOUTHEAST ARKANSAS LEVEE DIST. et al.

No. 11396.

Circuit Court of Appeals, Eighth Circuit.

Oct. 31, 1939.

J. Merrick Moore, of Little Rock, Ark., and John M. Holmes and Thompson, Mitchell, Thompson & Young, all of St. Louis, Mo., for appellants.

J. W. House, of Little Rock, Ark., and O. C. Burnside, of Lake Village, Ark., for appellees.

Before THOMAS and VAN VALKENBURGH, Circuit Judges, and DEWEY, District Judge.

VAN VALKENBURGH, Circuit Judge.

This is an appeal from an order of the District Court for the Eastern District of Arkansas allowing appellants the sum of $1,000 to cover the fees of their attorneys for services rendered in receivership and bankruptcy proceedings through a period commencing July 21, 1937, and continuing approximately for a year and a quarter thereafter. Appellants contend that this allowance granted is unreasonably inadequate compensation for the services rendered.

A sufficient understanding of the question presented requires a somewhat complete recital of the litigation involved, and of the nature of the services for which compensation is claimed. In support of their claim appellants have filed a substantially complete itemization of the participation of their attorneys in the various phases of the pending litigation, together with the nature of the questions arising, and the time and effort expended in connection therewith. Without doubt the legal services rendered involved a high order of professional ability and were potentially of value. The only question to be determined is the propriety of the allowance under the circumstances and the

controlling principles of law applicable thereto.

The litigation involved was commenced by the filing of a bill in equity February 5, 1932, by appellants herein as trustees under certain pledge agreements securing bonds outstanding aggregating $2,413,500 issued by the appellee Levee District. It prayed foreclosure of certain tax liens secured by said bonds, and the appointment of a receiver for the district. The taxes were in default, causing default in the payment of interest on the bonds. A receiver for the district was appointed by order entered on the same date. May 26, 1937, appellants, as trustees, filed a motion to terminate this receivership on the principal ground that the district had adopted a resolution to refund all of the principal of the bonded indebtedness by the issuance of new bonds, maturing in twenty years, at a reduced interest rate of 4%, the holders of the present bonds to waive substantially all delinquent interest. This plan was known as the "4% plan", and the motion alleged that the plan had been accepted by more than two-thirds of the bondholders.

June 17, 1937, the trustee for the Missouri Pacific Railroad Company, having a right of way in said district, filed a response, by way of intervention to this motion of appellants, objecting to the discharge of the receiver, and to the use of funds then in the hands of the receiver to pay a fee to bond-brokers for procuring the refunding, on the ground that the refund would not benefit the property owners.

June 28, 1937, appellants filed a supplemental petition showing that 82 percent of the outstanding bondholders had agreed to the four percent refunding plan, and praying the allowance of reasonable compensation and reimbursement for themselves and counsel in the performance of their duties as trustees. By order of September 24, this claim was allowed in the sum of $12,154, of which amount $1,700 was for expenses. Counsel received $10,454.

Coming now to the record after July 21, 1937, upon which the present claim is based, we find that on July 26, 1937, an intervening complaint was filed by Reba Poff and others owning taxable property in said Levee District, alleging depreciation of values of property within the district because of the Flood Control Act,

known as the Jadwin Plan, damages for which were pending in the Court of Claims. In general this intervention opposed the four percent refunding plan on the ground that a better policy had been adopted by other levee districts of settling their indebtedness for various percentages on the dollar of the principal amount of their bonds; and that the property could be handled more equitably and at much less expense through the receivership. The prayer was that the court should not act hastily, but should give opportunity for property owners to be heard, and to inquire into the proposed refunding plan, retaining the receivership in the meantime.

July 28, 1937, a hearing was held on the discharge of the receiver. At its conclusion the receivership was continued, and there was also a hearing upon motion of appellants for a distribution of $363,000 cash on hand and in the custody of the receiver.

Next, on August 12, 1937, the appellee Levee District, through its Board of Directors, filed its petition to set aside the court's order of July 28, 1937; also in terms adopting appellants' allegations respecting the termination of the receivership; reciting a futile attempt to induce the R. F. C. to make a loan to the district of sixty-two and one-half cents on the dollar, and advocating the adoption of the four percent plan of refunding, which would result in immediate and great reduction in taxes and corresponding benefit to the landowners. It was alleged that in December, 1936, this plan was discussed with the late Judge Martineau who expressed willingness to discontinue the receivership if the said plan were agreed upon by the district and the requisite percentage of the bondholders. The prayer of the Board of Directors was that the court set aside its order continuing the receivership, and that the receivership proceedings be terminated as prayed by appellants in their motion.

August 19, 1937, appellants filed an amendment to their petition for order of partial distribution, and requested the court to order the receiver to make certain past due interest payments on the bonds, amounting to interest for two and one-half years. September 8, 1937, the district, through its Board of Directors, filed its answer to this motion, objecting to partial distribution, on the ground that these accumulated funds were withheld for the

specific purpose of refunding the bonded indebtedness, and that the distribution would defeat the efforts to refund.

September 24, 1937, the district filed an amendment to its petition for rehearing on the order continuing the receivership, alleging that it had made application to the Reconstruction Finance Corporation for funds with which to make a cash settlement with its creditors. A loan of sixty cents on the dollar, together with fifteen cents from the district, would enable the district to offer a cash payment of seventy-five cents on the dollar. It was alleged that a similar offer had been accepted by a large majority of the bondholders. September 24, 1937, the St. Louis Union Trust Company, Trustee, by intervention joined in appellants' petition for an order of partial distribution. On this same day the intervening property owners (Reba Poff and others) filed a response to the Levee District's motion for rehearing and prayed that the motion be denied; also an answer to appellants' motion for partial distribution, praying that that motion be denied. At the hearing on the same day the court directed the continuance of the receivership and made no order for partial distribution. November 29, 1937, appellants filed a motion for a decree, on the pleadings, for immediate distribution of funds.

December 10, 1937, the State of Arkansas filed an intervention claiming that it had a tax lien on lands purchased by the district at foreclosure sales, prayed an accounting and judgment, and asked that the receiver be ordered to pay said judgment out of funds in his hands before distribution to other creditors. The Counties of Lincoln, Desha and Chicot filed similar interventions.

January 5, 1938, the district filed an answer and counter-proposal to the petition for disbursement of funds, announcing a new plan of refunding, which came to be known as the 3½% plan. Acceptance by two-thirds of the property of the district in value and acreage was alleged, and it was prayed that, upon acceptance by two-thirds of the holders of bonds, the receiver should be dismissed. January 14, 1938, appellants filed answer to the interventions of the State of Arkansas and the Counties of Lincoln, Desha and Chicot, denying that the district was indebted to the state or said counties on account of any general taxes by reason of purchases by the district through foreclosure. Next

came the order authorizing the Levee District to file a petition for composition of debts under the Municipal Bankruptcy Act, required by the Reconstruction Finance Corporation as a condition of its loan of sixty cents on the dollar, to be supplemented by fifteen percent from the district to permit a composition of the debts of the district at seventy-five cents on the dollar. This composition was ultimately effected, and it was left to the federal court having charge of the receivership proceedings to settle therein all claims for services, attorneys' fees, etc., including those based on services rendered in the bankruptcy proceedings. These proceedings involved the representation by counsel for appellant Mercantile-Commerce Bank and Trust Company of over two million, three hundred thousand dollars of bonds, resulting in the payment to the bondholders of seventy-five cents on the dollar.

As alleged by claimants, "these proceedings involved examination of all the pleadings, orders, notices, attendance upon hearings, and the keeping in contact with these proceedings to see that they were successfully concluded in accordance with law and the responsibility necessarily attached thereto". It will be noted that the bondholders, represented by appellants and their counsel, were giving up, through composition, vested liens in much larger amount, and it was essential that regularity in such proceedings should be scrupulously observed.

Reference has been made to allegations in the intervening petition of land owners (Poff and others) of depreciation in the values of certain property within said levee district because of the Mississippi River Flood Control Act of May 15, 1928, 33 U.S.C.A. § 702a et seq. During the period under consideration the case of Sponenbarger v. United States, which was a suit for compensation for the alleged taking of land in this levee district under the provisions of said Flood Control Act, was pending on appeal in this court, and, indirectly, at least, the issue involved concerned the value of all land similarly situated in Arkansas levee districts, and of bonds secured thereon. Conceiving that due regard for the preservation of the trust estate made participation in this litigation appropriate, Mr. Fred Armstrong, of counsel for appellants herein, appeared at the hearing in this court and filed brief in support of the appellant in that case. 8 Cir., 101 F.2d 506.

The transcript of the record sets out two specimen copies of the pledge agreements under which appellants were designated as trustees under the bonds of the Levee District, to-wit:

"Said District further agrees that if default takes place in the payment of any of the bonds or coupons, there shall be paid to the said Trustee out of the proceeds of said assessments, and before the payment of the interest and principal of said bonds, a reasonable compensation to the Trustee and to such counsel as the Trustee may find it necessary to employ * * *.

"The said Trustee shall be entitled to reasonable compensation by the district for all services performed and reimbursement for expenses incurred in the performance of its duties under this trust".

"Said District further agrees that if default takes place in the payment of any of the bonds or coupons, there shall be paid to the said Trustee out of the proceeds of said assessments, and before the payment of the interest and principal of said bonds, a reasonable compensation to the Trustee and to such counsel as the Trustee may find it necessary to employ. * * *

"The said Trustee shall be entitled to reasonable compensation for all services performed and reimbursement for expenses incurred in the performance of its duties under this trust."

The services of the trustees and their counsel are thus recapitulated in their brief: "The plaintiff-trustees were acting in the discharge of their duties as such. They were called upon by the dealers committee to file the original petition asking the termination of the receivership, in order that the four (4) per cent plan might be consummated (Tr. p. 244). They, therefore, became involved in a series of litigation and all of their efforts were in discharge of their duties to protect the rights of the bondholders, who were numerous and scattered throughout the United States from Maine to California (Tr. p. 243), and who had no status in court as such and no articulate means of expression except through the appellants'-trustees, acting upon the advice and recommendation of this dealers-committee. In performance of these duties, despite the fact that they had been able to obtain the co-operation of the board of directors of the District and its attorneys, their ef-

forts were met with opposition from sources that had no legal right to object. However, through the constant efforts of the appellant-trustees, the final result was the obtaining the R. F. C. loan and the cash settlement. It would be idle to contend that this cash settlement was the direct and proximate result of the litigation. However, the bondholders were paid off in cash at this figure, which represented a substantial increase over the low price at which the bonds had previously sold".

The issue presented is thus stated in appellants' brief: "The claim of appellants is based: First, on the contractual obligation of the District provided in the pledge agreements; and, second, the right of a Federal Equity Court to tax as costs in a foreclosure proceeding, reasonable counsel fees".

Appellees contend that: (1) The laws of Arkansas do not countenance the allowance of attorneys' fees in foreclosure of mortgages or deeds of trust, and, in that view, appellants cannot recover. (2) The finding of the master, approved by the court, is not against a clear preponderance of the testimony, and is therefore conclusive. (3) If an additional allowance is made the Levee District should be entitled to credit for that part of the amount paid appellants and their attorneys, which was made chargeable to the bondholders under the order of September 24, 1937.

Let us consider the several grounds upon which the claim of appellants is based. Under the more recent holdings of the Supreme Court in Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Insurance Company, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, a federal court, exercising jurisdiction over a case on the ground of diversity of citizenship, must, so far as it is applicable, apply the state law as declared by the highest state court.

"The doctrine applies though the question of construction arises not in an action at law, but in a suit in equity". Ruhlin v. New York Life Ins. Co., supra, 304 U.S. loc. cit. 205, 58 S.Ct. loc. cit. 861, 82 L.Ed. 1290.

In Boozer v. Anderson, 42 Ark. 167, it is held that a stipulation in a promissory note for attorney's fees in favor of the payee is void. In Jarvis v. Southern Grocery Co., 63 Ark. 225, 231, 38 S.W. 148,

149, the Supreme Court of Arkansas said: "In the case at bar the stipulation is in the mortgage or deed of trust. There does not appear to us to be any difference of principle between the two cases. If void in a suit at law, there is no reason why it should not be held as void in a suit in equity". Again in 1931, the Supreme Court of Arkansas held that attorney's fees cannot be allowed as costs notwithstanding provision therefor in a trust deed; it said: "The trustee had no duties to perform, except in foreclosure of the mortgage, if it became necessary, and no error was committed in refusing to allow the trustee expenses including a reasonable attorney's fee". American Exchange Trust Co. v. Trumann Special School District, 183 Ark. 1041, 40 S.W.2d 770, 771; citing Boozer v. Anderson, supra, and Federal Land Bank of St. Louis v. Craig, 176 Ark. 381, 3 S.W.2d 34.

In Mercantile Trust Company v. Wilmot Road District, 275 U.S. 117, 48 S.Ct. 61, 72 L.Ed. 192, it is recognized that, where a covenant in bonds secured by deed of trust provides that there shall be paid to the mortgage trustee, out of the proceeds of the mortgaged subject matter, a reasonable compensation to the trustee and to counsel it may find necessary to employ, such payments are in addition to payment of the bondholders. It is held that such covenant provisions authorize the payment of reasonable fees to the mortgage trustee and its attorneys, where the fund created by the benefits assessed in the improvement district subject to the bonds is sufficient to pay such costs and the bonds also.

■ The rule, frequently announced and long established, is thus pertinently stated in a case involving much the same question as that here presented: "There is a stipulation in the trust-deed for the payment of an attorney's fee of $1,000, in case of foreclosure, but such stipulations have been held by the supreme court of Nebraska to be unauthorized. Dow v. Updike, 11 Neb. 95, 7 N.W. 857; Hardy v. Miller, 11 Neb. 395, 9 N.W. 475. It seems that in 1873 an act passed the legislature of Nebraska, expressly authorizing, in any written instrument for the payment of money, a stipulation for not exceeding 10 per cent. as an attorney's fee in case of suit. Gen.St.Neb. p. 98. This act was repealed in 1879. Laws Neb.1879, p. 78. In the cases cited, the supreme court of the state held that by the repeal of the statute the contract right to recover attorney's fees was taken away. So, as this court follows the decisions of the highest court of the state in such matters (Bendey v. Townsend, 109 U.S. 665, 3 S.Ct. 482 [27 L.Ed. 1065]), the provision in the trust-deed for the payment of $1,000 as attorney's fees cannot be regarded as of binding force. But, while contract rights are settled by the law of the state, that law does not determine the procedure of courts of the United States sitting as courts of equity, or the costs which are taxable there, or control the discretion exercised in matters of allowances. Those courts acquire their jurisdiction and powers from another source than the state. There is no statute of Nebraska in respect to the matter. Even if there were one expressly prohibiting courts of equity from making allowances to trustees or their counsel, such prohibition would not control the proceedings in federal equity courts. They proceed according to the general rules of equity, except so far as such rules are changed by the legislation of congress; and while they may enforce special equitable rights of parties given by state statutes (Holland v. Challen, 110 U.S. 15, 3 S.Ct. 495, [28 L.Ed. 52]), yet their general powers as courts of equity are not determined and cannot be cut off by any state legislation. It is the general rule of equity that a trustee called upon to discharge any duties in the administering of his trust is entitled to compensation therefor, and included therein is a reasonable allowance for counsel fees". Dodge v. Tulleys, 144 U.S. 451, 456, 457, 12 S.Ct. 728, 730, 36 L.Ed. 501.

■ It lies within the power of the court as a court of equity to make a successful litigant an allowance of costs, i. e. fees and expenses, "as between solicitor and client" in exceptional cases for dominating reasons of fairness and justice, where the suit redounds to the benefit of others in like situation, as generally, where a fund has been created in the enjoyment of which such others may participate. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. It is of course the duty of a trustee to preserve the property generally for the benefit of all the beneficiaries, and to take such action regarding the trust property as will conduce to its welfare and reduce loss or decrease in value. 65 C.J. par. 561,

p. 694, and cases cited. It seems quite certain from the express language of the Supreme Court of Arkansas, as well as from holdings of the Supreme Court of the United States in latest decisions, that the efforts of and allowances to trustees and their counsel in the instant case must be reasonably restricted to the essential duties of trustees as such, as distinguished from services to the bondholders, under a broader construction of the pledge agreements. These agreements must not be converted indirectly by construction into stipulations for attorney's fees on foreclosure as between mortgagor and mortgagee.

■ The master in his report, which was approved by the trial judge, held that the decisions of the Supreme Court of Arkansas did not operate to deny compensation to a trustee in the execution and protection of his trust, but that the claim for attorney's fees, in order to be a charge against the trust, must have been performed for the trustee. We think this correctly states the law; and the rule announced applies to the right of a federal equity court to tax reasonable counsel fees in a foreclosure proceeding, as well as to the contractual obligation of the levee district provided in the pledge agreements. It becomes necessary, therefore, to examine the services rendered in the light of that construction.

■ It is manifestly difficult to distinguish with nicety between services rendered in strict adherence to the rule governing the duties and rights of trustees, and those affecting the interests of the bondholders, and, incidently, if not directly, those of the levee district and its landowners. It must be conceded that counsel for the trustees devoted a great deal of time and labor, involving a high order of professional ability, to questions affecting the substantial preservation of the trust estate and the beneficial interest of all concerned. Among these services may properly be considered the efforts to produce a refunding of the bond indebtedness which would inure to the benefit of the levee district and tax-payers as well as to the trust estate. The precise refunding plans were not effected, but it may well be argued that the continued and consistent efforts in that direction prepared the divergent interests for ultimate acceptance of the compromise through proceedings in bankruptcy.

This campaign was largely initiated by the trustees in their motion to terminate the receivership. This movement was concededly within their province as was that procuring the receivership in the first instance. In connection with this litigation numerous conferences were necessary to reconcile the conflicting interests. Hearings were held and the appearances and preparation of briefs entailed the expenditure of time and labor. These hearings were bitterly contested in some instances, and the efforts of counsel for the trustees were met with energetic opposition. In view of the costs of the receivership, the persistent growth in delinquent interest, and the generally depressed condition of the finances of the district, some sort of refinancing plan was immediately desirable; and a reasonable effort to promote such a plan can hardly be said to be foreign to the legitimate duties of a trustee in the discharge of its responsibilities to preserve the trust estate from loss and decrease in value. In addition to the motions for and against termination of the receivership and the hearings thereon, appellants sought a distribution of moneys in the hands of the receiver, and acted to protect the interests of the trust estate in pending Flood Control litigation. For all these services of counsel the claim filed was for $15,000.00. The allowance was for $1000.00. In reaching their conclusion both master and court were probably influenced by the fact that, for services during previous periods, not here under consideration, substantial compensation had been claimed and allowed. We are sensible of the general rule that such allowances rest within the sound discretion of the trial judge. Buford et al. v. Tobacco Growers' Co-operative Association et al., 4 Cir., 42 F.2d 791; Drilling & Exploration Corporation v. Webster, 9 Cir., 69 F.2d 416; Federal Oil Marketing Corporation v. Cravens, 8 Cir., 46 F.2d 938. And to warrant interference the appellate court must be convinced that the allowance made in the trial court is clearly excessive or insufficient, as the case may be. Tracy, et al. v. Spitzer-Rorick Trust & Savings Bank et al., 8 Cir., 12 F.2d 755.

■ It is agreed that findings of the master, sustained by the trial court, should not be set aside unless clearly erroneous, and that it is, and should be, the policy of the courts that receivers and attorneys, in litigation affecting the administration of

property and estates, should not be granted excessive compensation. In re New York Investors, Inc., 2 Cir., 79 F.2d 182, 185. However, appellate courts, as trial courts, are themselves experts as to the reasonableness of fees, and may, in the interest of justice, fix the fees of counsel, albeit in disagreement on the evidence with the views of the trial court. Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940; Blackhurst v. Johnson, et al., 8 Cir., 72 F.2d 644; Federal Oil Marketing Corporation v. Cravens, 8 Cir., 46 F.2d 938; Tracy v. Spitzer-Rorick Trust & Savings Bank, 8 Cir., 12 F.2d 755. And see further on this point Mercantile Trust Company v. Road District, supra, and Dodge v. Tulleys, supra.

In our judgment the allowance made from which this appeal is taken was manifestly inadequate. Both master and court by that allowance have conceded that the services rendered fall, in some degree, within the rule justifying compensation to the trustees and their counsel. From the evidence adduced, as well as from this implied concession, we feel that the allowance made falls far short of the value of such services. We think an allowance of $5,000 would more nearly meet the requirements of adequacy, and fall within the bounds of moderation. The court's order contemplates that these allowances should be made and discharged within the receivership case irrespective of the bankruptcy feature. It is our judgment further that all past allowances, under these issues, be not disturbed nor affected by the decision herein.

The case is reversed and remanded for further proceedings not inconsistent with the views herein expressed. It is so ordered.