## AMERICAN CASUALTY CO. v. HARRISON et al.

Civ. No. 452.

United States District Court
W. D. Arkansas, Hot Springs Division.

March 22, 1951.

Cooper Land and Eugene Matthews (of Wootton, Land & Matthews), Hot Springs, Ark., Malcolm Gannaway, Little Rock, Ark., for plaintiff.

Mallory & Rasmussen, Hot Springs, Ark., for defendant Gilford A. Harrison.

McMath, Whittington, Leatherman & Schoenfeld, Hot Springs, Ark., for defendant R. S. Langman.

Lloyd E. Darnell and Earl J. Lane, Hot Springs, Ark., for defendant Al Wainer.

JOHN E. MILLER, District Judge.

This is a suit for a declaratory judgment, wherein the plaintiff prays that the court declare its rights and liabilities under a certain contract of insurance.

There is also before the court a motion to dismiss or in lieu thereof to quash service as to defendant Langman. Inasmuch as a hearing on the factual question raised by the motion would have meant a duplication in the presentation of evidence, disposition of this motion was postponed until the trial of the case on its merits.

The case came on for trial to the court on February 12, 1951, and at the conclusion of the presentation of evidence, the case was submitted subject to the taking and filing of certain depositions and the filing of briefs. Such depositions and briefs have now been filed, and the court, having considered the pleadings, evidence adduced at the trial, depositions and briefs, makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

**1**

Plaintiff is a citizen of the State of Pennsylvania, and is authorized to do business in the State of Arkansas. De-

fendant, Harrison, is a citizen and resident of the State of Arkansas. Defendant, Wainer, is a citizen and resident of the State of Arkansas. Defendant, Langman, is a citizen and resident of the State of Illinois. The amount in controversy exceeds the sum of $3,000.00, exclusive of interest and costs.

2

Sometime prior to March 6, 1951, Richard S. Langman, d/b/a C. H. Langman & Son, entered into a contract with J. J. Newberry Company, Inc., for the remodeling and repair of the J. J. Newberry Co., Inc., store located at 604–614 Central Avenue, Hot Springs, Arkansas. The consideration named in the contract was $64,849.00. Shortly after entering into the contract, defendant, Langman, placed orders for certain items upon which there might be a delayed delivery, such as steel, and made arrangements to commence work under the contract on the Hot Springs Store. D. G. McCulloh was placed in charge of the work. A building permit was secured from the City of Hot Springs on March 6, 1950, and work was started shortly thereafter. This permit was later assigned to Harrison or a new permit was issued to him without additional fee.

Almost immediately after work was started, Langman was forced to cease operations by State authorities because he had not secured the necessary contractor's license required under the laws of Arkansas. Langman made application for a license on March 15, 1950, but the same was not immediately forthcoming.

Langman had done a considerable amount of work for the Newberry Co. in the past under other contracts amounting to $536,-000.00, and did not want to impose any more trouble and expense upon said Company than was necessary, or delay the work on the Hot Springs building, so he approached Gilford A. Harrison, a contractor licensed under Arkansas law, in an effort to make some arrangements satisfactory to all interested parties. The subsequent dealings between Langman, Harrison and Newberry resulted in the following:

The contract between Langman and Newberry was cancelled and letter of April 13, 1950, Exhibit 1 to testimony of Langman, confirmed cancellation and advised him of acceptance of Harrison by Newberry; Harrison and Newberry entered into contract for remodeling and repair of Newberry store in Hot Springs, for same consideration as in contract between Langman and Newberry; Langman and Harrison entered into contract concerning the work called for in the contract, the terms of which are set forth in finding number 4.

3

The contract between Harrison and Newberry was entered into on April 13, 1950, by the terms of which Harrison agreed to do the work called for by the plans and specifications on the Newberry store at 604–614 Central Avenue, Hot Springs, Arkansas, for a consideration of $64,849.00 Said sum was to be paid in monthly installments of eighty-five percent of the value of the work completed, and the balance of fifteen percent thirty days after final completion of the entire work. The contract also contained the following provisions:

"The contractor agrees, during construction, to protect from damage and injury not only the building and other property of the owner but also to protect from damage and injury the buildings, foundations and other property of adjacent owners and their employees, licensees and guests and further agrees, at his own cost and expense, to defend any and all suit or suits in relation thereto, whether brought against the owner or contractor, or both, and at all times to indemnify and hold harmless the owner from all loss, damage and liability, including claims for personal injuries, if any, caused by any act, neglect or omission of the contractor.

"The contractor shall carry public liability insurance in amounts of $50,000/100,-000 insuring the contractor and the owner against any loss or damage by reason of personal injuries during construction, as stated in specifications."

**4**

Harrison and Langman entered into their contract on April 19, 1950, the terms of which are as follows:

"1. Langman will furnish all labor and materials and guarantee the performance of all the work to be done for J. J. Newberry Company, Inc., at 604-614 Central Avenue, Hot Springs, Arkansas, under the General Contract entered into the 13 day of April, 1950, between J. J. Newberry Company, Inc., and Harrison. This General Contract shall hereinafter be called The General Contract. Langman will do the foregoing in accordance with The General Contract Conditions and in accordance with the drawings and specifications, all of which General Conditions, Drawings and Specifications hereby become a part of this Contract.

"2. Langman will complete all the work under The General Contract on the dates specified in that Contract.

"3. Langman will bear all costs under The General Contract and will pay all labor, material and other bills. It is understood that this will be done as follows:

"Harrison will pay all labor, material and all other bills as such bills become due by Harrison's check. Langman will simultaneously pay Harrison the same amounts Harrison pays out under this arrangement.

"4. Harrison will cause a separate set of books to be maintained for this job and will furnish Langman a complete record of all transactions and all time sheets.

"5. Harrison will hire D. G. McCulloh as foreman for the work to be done under The General Contract. D. G. McCulloh shall have complete charge of and responsibility for the performance of all the work to be done under The General Contract, Drawings and Specifications.

"6. The Surety Bond required by the General Contract will be furnished by Langman.

"7. Harrison will carry the insurance required by the General Contract but will be reimbursed by Langman for the premiums paid in the manner set forth in Paragraph 3 above.

"8. Langman will receive the Sixty-four Thousand Eight Hundred Forty-nine Dollars ($64,849) which will be paid by J. J. Newberry Company, Inc., for the work to be done on the J. J. Newberry building. Payments will be made to Nathan L. Shoenfeld, Trustee, for the use and benefit of Langman.

"9. Harrison will receive one Thousand Dollars ($1,000.00) from Langman. Five Hundred Dollars ($500.00) is to be paid Harrison at the time work under this Contract is commenced and the remaining Five Hundred ($500.00) is to be paid Harrison upon completion of the work to be done under The General Contract.

"It is expressly emphasized that Langman will bear all costs whether or not the work done under The General Contract is done at a profit. If there is any loss, it shall be borne entirely by Langman."

**5**

The Kimball-Disheroon Agency, an agent of the plaintiff in Hot Springs, Arkansas, has handled the insurance of Harrison for a number of years. As a contractor, Harrison, carried a general policy that covered all of his operations. The preliminary premium was fixed by estimate at the time of issuance of the policy, and the final or total premium was determined at a later date in accordance with a pay roll audit conducted by a representative of the insurance company. Harrison's policy expired and was renewed April 5, 1950. Shortly thereafter Harrison and McCulloh went to see Mr. Disheroon and advised him of the Newberry job and of the contract requirement that public liability be carried in the sum of fifty and a hundred thousand. The policy then in existence called for ten and twenty thousand. Harrison brought with him the plans and specifications on the Newberry job and they were turned over to Mr. Disheroon, for his examination. Disheroon called Mr. John R. Wiest, underwriter for the plaintiff, in the Arkansas office at that

time, advised him of the Newberry remodeling job, and requested that a new policy be sent with the increased coverage for personal injuries. This was done. A few days thereafter, around April 29, 1950, Harrison or McCulloh advised Disheroon that Newberry required that the then amended policy coverage of one thousand, ten thousand aggregate, for property damage be raised to ten thousand, twenty-five thousand aggregate. Disheroon called Wiest and advised him of this fact, whereupon an endorsement was forwarded covering the same. Also, there appears on the policy an endorsement, dated June 10, 1950, adding the name of J. J. Newberry & Company of New York as a party insured. Langman was not listed as a party insured in the policy or endorsement.

Harrison asked for and thought he had received full coverage for the Newberry job. Both Messrs. Disheroon and Kimball intended to and thought they were giving him full coverage for public liability and property damage within the policy limitations as to amount. In addition to Mr. Disheroon's examination of the specifications, Mr. Kimball made almost daily visits to the scene of the remodeling which was across the street from his office, and he observed the nature of and progress of the work being done.

Kimball and Disheroon were soliciting agents only and were not the general agents of the plaintiff and did not countersign the policy or endorsements. As to whether Wiest was a general agent of the plaintiff was not fully developed at the trial, but the testimony and circumstances justify an inference that it was within Wiest's apparent authority to issue policies and make oral contracts binding upon the plaintiff. When the increased coverage was requested, Wiest, upon request, issued a new policy and subsequently issued a requested endorsement, which action on his part was known to and relied upon by Harrison. However, while Disheroon advised Wiest of the Newberry remodeling job, it does not appear that Wiest was advised of any shoring or other extra-hazardous work necessary to be done in accomplishing the work. The plans and specifications, a copy of which was given to Disheroon, were not furnished Wiest, and Disheroon did not advise him of any operations called for therein which would fall within the exclusionary clause G(2)(c) of the policy.

This policy of insurance continued in full force and effect until it was cancelled by the plaintiff, by notice given September 9, effective September 16. A payroll audit was made on the operations of Harrison, covering the period from April 5, 1950, to September 21, 1950, and as the result thereof Harrison was billed and paid an additional premium on this policy.

6

Pertinent policy provisions are as follows:

"1. Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

"II. Service, Defense Settlement, Supplementary Payments. It is further agreed that as respects insurance afforded by this policy the company shall

"(b) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company; * * *."

"Exclusions. This policy does not apply:

"(c) under divisions 1 and 2 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement, or under division 3 to liability of others assumed by the insured under any contract or agreement;

"(g) under division 1 of the Definition of Hazards,

"(2) to injury to or destruction of property caused

"(x) by blasting or explosion, other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or

"(c) by the collapse of or structural injury to any building or structure due to excavation, pile driving or caisson work or to moving, shoring, underpinning, raising or demolition of any structural support thereof, or

"(u) to wires, conduits, pipes, mains, sewers, or similar property or any apparatus in connection therewith, below the surface of the ground arising from and during the use of mechanical equipment for the purpose of excavating or drilling in streets or highways, or to injury to or destruction of property at any time resulting therefrom.

"except such injury or destruction arising out of operations described in Item 4 of the declarations as not subject to paragraphs (x), (c) and (u) above."

Item 4 of the declarations does not list any operations pertinent hereto which are not subject to the (x), (c), (u) exclusions.

For coverage on exclusion (g) (2) (c) an additional premium of approximately $25.00 per hundred is charged. Such additional premium was not charged or collected on this policy.

## 7

On July 6, 1950, Al Wainer, d/b/a Alvin Hotel, brought suit in the Garland Circuit Court against J. J. Newberry Co., J. W. Taylor, Manager, and Gilford A. Harrison, and alleged that he, Wainer, occupied and operated as a hotel the second, third and fourth floors of the building in which the Newberry store is located and which was being remodeled; that due to the negligence of the defendants in performing the remodeling work plaintiff has been damaged by loss of profits and necessary repair work caused by the settling of the first floor of the hotel, warping and spreading of floors, walls and ceilings, etc.; and praying damages in the total sum of $20,412.00.

Harrison advised the plaintiff of the Wainer suit and requested plaintiff to assume the defense thereof. By letter of July 25, 1950, written to Harrison by Earl D. Cotton, plaintiff accepted the defense of the suit "under a full reservation of our policy rights". A similar reservation was made in the case of the Newberry Company.

Subsequently plaintiff brought the present suit in this court for a declaratory judgment. The suit by Wainer has not been tried and is now pending in the Circuit Court of Garland County, Arkansas.

## 8

D. G. McCulloh, according to paragraph 5 of the Harrison-Langman contract, was to "have complete charge of and responsibility for the performance of all the work to be done under The General Contract, Drawings and Specifications". McCulloh, who had been employed by Langman for approximately 10 years, started the Newberry job in Hot Springs as general superintendent for Langman and was carried on Langman's payroll from April 19 to May 7. Thereafter, in accordance with the terms of the Harrison-Langman contract, McCulloh continued on the job as superintendent or foreman, and was carried on Harrison's payroll until October 15, when he went back to Langman's payroll, where he has since remained. After the completion of the Newberry job in Hot Springs, McCulloh continued in the employ of Langman and at this time is acting as foreman of a Newberry job in Camden, South Carolina. As will subsequently appear in Finding No. 10, McCulloh advanced a considerable sum of money at various times, presumably to cover labor and supplies, and was reimbursed directly therefor by Langman.

## 9

As stated above Harrison received $1,000.00 under his contract with Langman. He held himself out as the contractor by visiting the job frequently; placing a large sign on the premises to that effect; at a hearing involving a labor dispute testified that he was the contractor, and he

inserted a congratulatory ad in the newspaper as the contractor. Also, he furnished the labor, which consisted of men that had worked and did work for him on other jobs, bought a portion of the materials and secured most of the sub-contractors.

Harrison testified that while McCulloh was in charge of the details of the work, he (Harrison) was the actual contractor and on any issue between the two, he would have had the authority to direct McCulloh in the performance of the work. In this regard other witnesses testified that they had been on the job and had seen and heard Harrison and McCulloh discussing the details of the work.

10

When Langman entered into the contract with Newberry for the Hot Springs job he immediately placed orders for steel and other critical materials. And, as stated above, he secured a building permit from the City of Hot Springs and actually started the construction work, with McCulloh in charge as foreman. His contact with the progress of the job after the execution of the contract with Harrison is reflected by plaintiff's exhibit 9, which is set forth here in full.

"C H. Langman & Son          1950
    Expenses—Gilford A. Harrison
J. J. Newberry Job, Hot Springs, Ark.

| | | |
|---|---|---:|
| 4/8 | Expenses trip to Hot Springs (5 das) | 118.00 |
| 3/20 | Arkansas State Licensing Board | 50.00 |
| 4/27 | Carter Steel Products—1st payt. for struct. steel | 2,839.77 |
| 5/16 | D. G. McCulloh—Payroll & Misc. Expenses | 964.00 |
| 5/22 | D. G. McCulloh | 1,274.83 |
| 5/24 | Carter Steel Products—2d payt. struct. steel | 3,105.95 |
| 4/25 | D. G. McCulloh | 1,661.29 |
| 6/8 | Ceco Steel Products Corp. Reinf. Steel | 534.68 |
| 5/29 | D. G. McCulloh | 455.99 |
| 5/30 | Expenses—R. S. Langman —trip to job | 124.00 |
| 6/10 | D. G. McCulloh | 846.35 |
| 6/8 | Western Union—G. D. McCulloh | 806.01 |
| 6/19 | D. G. McCulloh | 1,425.87 |
| 6/27 | D. G. McCulloh | 858.21 |
| 7/1 | Gilford A. Harrison | 2,458.32 |
| 7/1 | D. G. McCulloh | 800.65 |
| 7/1 | McMath, Whittington, Leatherman & Schoenfeld—legal Exp. | 250.00 |
| 7/3 | The Wm. Dayley Co.—Aluminum Windows | 263.66 |
| 7/3 | Fred Setterdahl, CPA, auditing books for State License | 375.00 |
| 7/3 | N. O. Nelson Company—plumbing supplies | 1,029.00 |
| 7/7 | Secretary of State, Ark., Registering license | 1.00 |
| 7/14 | D. G. McCulloh | 875.56 |
| 7/18 | D. G. McCulloh | 879.00 |
| 7/25 | D. G. McCulloh | 1,070.42 |
| 7/2 | Expenses—trip to job—R. S. Langman—train fare, etc. | 105.00 |
| 7/26 | Midwest Metals Corp. Steel Door | 159.40 |
| 8/2 | D. G. McCulloh | 935.34 |
| 8/5 | Arkansas Foundry Co. lathing channels | 192.20 |
| 8/8 | D. G. McCulloh | 1,161.46 |
| 8/10 | Gilford A. Harrison | 1,500.00 |
| 8/10 | Kaufman Electric Co. & Gilford A. Harrison | 2,000.00 |
| 8/9 | Gilford A. Harrison | 218.10 |
| 8/16 | D. G. McCulloh | 871.59 |
| 8/15 | Marsh & Truman Lbr. Co. (plywood for floor) | 1,624.32 |
| 8/15 | N. O. Nelson—plumbing supplies | 1,237.14 |
| 8/21 | D. G. McCulloh | 1,600.31 |
| 5/6 | Expenses—R. S. Langman —trip to job site | 78.00 |
| 8/24 | Carter Steel Products Co. Final payt. struc steel | 162.99 |
| 8/28 | Louis Hanssens Sons | 51.85 |
| 8/31 | Cyclone Fence Division—Wire Mesh partition | 113.22 |
| 9/24 | D. G. McCulloh | 2,287.46 |
| 9/2 | Gilford A. Harrison & Kaufman Electric | 2,000.00 |
| 9/7 | Robt. Tarlo & Son—Door hdwe. | 123.80 |
| 9/4 | Trip—R. S. Langman to job | 100.00 |
| 9/7 | Victory Granite Co. | 834.43 |
| 9/7 | Midwest Metals Corp. screw nails | 16.09 |

| | | |
|---|---|---|
| 9/12 | D. G. McCulloh | 2,022.75 |
| 9/18 | Edmann Supply Co. plumbing supplies | 8.18 |
| 9/18 | N. O. Nelson Co. plumbing supplies | 229.07 |
| 9/25 | D. G. McCulloh | 1,796.93 |
| 9/27 | Dohrn Trfr Co. Frt on Grilles | 3.21 |
| 9/29 | Kaufman Elec. & Gilford A. Harrison | 2,000.00 |
| 9/29 | Lee Parvin & Gilford A. Harrison | 1,000.00 |
| 9/28 | Richmond Fireproof Door Company | 296.94 |
| 10/7 | D. G. McCulloh | 1,000.00 |
| 10/12 | Gilford A. Harrison | 804.26 |
| 10/12 | D. G. McCulloh | 368.89 |
| 10/26 | Carpenter Floor Covering Co. & Gilford Harrison | 1,985.36 |
| 10/28 | D. G. McCulloh | 1,245.09 |
| 10/30 | N. D. Nelson Co. plbg. supplies | 454.73 |
| 11/12 | Gilford A. Harrison & E. W. Thornton Awning Co. | 500.00 |
| 11/14 | Gilford A. Harrison & Arkansas Glass Co. | 7,547.38 |
| 11/15 | W. F. Dowling Tile Contractors & Gilford A. Harrison | 1,721.22 |
| 11/24 | Louis Hanssen's Sons. Hdwe | 21.50 |
| 11/24 | Gilford A. Harrison & Lee Parvin Painting Co. | 1,230.65 |
| 11/24 | Gilford A. Harrison | 616.99 |
| 11/24 | D. G. McCulloh | 1,386.24 |
| 11/24 | Kaufman Electric Co. | 1,257.69 |
| 12/1 | N. O. Nelson Co.—plbg. supplies | 49.57 |
| 12/15 | Am. Rad. & Std. San. Corp. —plbg. supplies | 14.70 |
| 1/9 | D. G. McCulloh | 789.35 |
| 1/2 | Stanley Wood—lathing & plastering | 3,738.54 |
| 1/2 | Lee Parvin Painting Co. Sandblasting | 969.18 |
| 1/24 | D. G. McCulloh | 380.00 |
| 1/24 | Dodd. Plbg. Co. | 763.00 |
| 1/30 | McMath, Whittington, Leatherman & Schoenfeld | 100.00 |
| 2/5 | Gilford A. Harrison | 500.00 |
| 2/5 | Kaufman Elec. Co. | 65.04 |
| | Payroll to McCulloh—looking over job, lining up bids, etc. | 760.00 |
| | S. S., Unempl. tax, ins., etc. | 76.00 |
| | S. Sec., etc. | 47.50 |
| | Payroll to McCulloh—at end of job | 475.00 |
| 2/5 | Expenses to Hot Springs— R. S. Langman—Business | 40.00 |
| | Total Cost of Job to Date— | $76,705.22" |

Langman secured a contractor's license from the State of Arkansas on July 1, 1950, and with McCulloh in charge and back on his payroll actually performed the finishing work or extra work on the job.

Langman testified that Harrison was the general contractor and that he (Langman) only maintained such contacts with the job as he felt were necessary to protect his interests. He also testified that though Harrison maintained a separate set of books on the job, as provided for in the Harrison-Langman contract, he did not examine the books because the expenses appeared to be reasonable.

In accordance with the contract Newberry made all payments to Mr. Nathan Schoenfeld, trustee, who paid the same directly to Langman.

11

As witnesses the defendants Harrison and Langman are not disinterested and the court, after giving due consideration to the contracts and circumstances surrounding their execution; all of the evidence adduced; and the interest of the various witnesses, is of the opinion and, therefore, finds that Langman, personally and through McCulloh, actually controlled the physical conduct of the work both as to result and means and methods of performance. Harrison did maintain certain contacts with the work, as hereinbefore set forth, but not to the extent of actually exercising any control over the ways and manner of performance. The court cannot believe that Langman, a business man and contractor of considerable experience, would turn over a $64,849.00 job, with an agreement to bear all costs and any loss,

to a comparatively unknown contractor, as was Harrison insofar as Langman was concerned, with no retention of control over the ways and manner of performance. Langman was careful to and did retain the right of complete control in the contract and he exercised right of control in the actual performance of the job.

### Discussion

The plaintiff agreed "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law". By virtue of this provision, the court is of the opinion that as to defendant Wainer, plaintiff within the limitations of the insurance policy stands in the shoes of its insured, Harrison. Langman was not a party insured, and plaintiff is responsible for acts of or acts of others chargeable to Langman only insofar as Harrison is responsible for such acts.

Two contentions of policy limitations made by plaintiff may be disposed of briefly.

Any liability on the part of Harrison arising out of the facts before the court would be "liability imposed upon him by law" and would not be "liability assumed by the insured under any contract or agreement" within the meaning of Exclusion (c) in the insurance policy. It is true that the relationship existing between Langman and Harrison was created by contract, but liability, if any, by virtue of that relationship is the result of the operation of the law thereon. The request of plaintiff that the court find that the policy covers only damages which arise as the result of accident seems unnecessary in view of the plain and undisputed language of the policy. Frankly, the court does not fully understand this request of plaintiff, which has not been elaborated upon, but if plaintiff means that by this provision policy coverage is limited to those damages arising from accident in the sense of a mere happening without fault or negligence on the part of anyone, and as distinguished from damages resulting from negligence, the court rejects such a contention. See: Casenote, Insurance-Mean-

ing of 'Accident' in Policy Coverage, 4 Ark.Law Review page 239. The contention of plaintiff concerning Exclusion g(2)(c) will be discussed subsequently.

The plaintiff contends that the Harrison-Langman contract was a subterfuge to avoid the requirement of the Arkansas contractor's licensing law; that Langman was actually the responsible contractor in charge of this job throughout; that Langman was not a party insured; and that, under the policy of insurance, it is not obligated to defend the state court suit against Harrison and is not obligated to indemnify Harrison for any judgment recovered against him in that suit. And, plaintiff further contends that in any event Langman was an independent contractor; that under the law of Arkansas Harrison is not responsible for Langman's negligence in the performance of the work; and that, therefore, it is not obligated to defend the state court suit since its insured, Harrison, could have no liability imposed upon him in that suit. Findings and conclusions to this effect are requested by plaintiff.

As stated above, the court is of the opinion that within the limitations of policy coverage, plaintiff, on the issue of liability, stands or falls with its insured Harrison, regardless of the legal tags which should be attached to the parties denoting their relationship one to another. On their briefs Harrison and Langman very frankly admit that the contracts involved herein were entered into because Langman was unable to proceed without a license under the contractor's licensing law, Ark.Stats. 1947, Secs. 71–701 to 719, inclusive. However, plaintiff, though contending that the entire arrangement was a mere subterfuge, nevertheless relies strongly upon the provisions of the contract between Harrison and Langman to support its contention that Langman was the responsible contractor. Apparently, therefore, plaintiff is not contending that the contracts are void or voidable as being against the public policy declared by the legislature in enacting the licensing law. And, the court does not believe that, under the facts, it can or should so declare. Regardless of the motives of the parties in executing the

contracts, and regardless of whether there was a violation of the Arkansas contractor's licensing law, on which the court expresses no opinion, the court concludes that the responsibility or liability of the various parties must be determined from a consideration of the contracts and the conduct of the parties in the performance of the work under and pursuant thereto.

■ Under Harrison's contract with Newberry, he was the responsible party to whom Newberry could look for the satisfactory performance of the work. There is no provision in that contract prohibiting the letting of portions of the work to other contractors or for that matter an assignment of the entire job insofar as Harrison was concerned, but as to Newberry, Harrison remained the responsible party. It is common knowledge that contractors usually sub-contract for portions of the work.

■ The contract between Harrison and Langman gave the latter complete control over the means or methods of performance of the work. And, the court has found that in the actual means or methods of performance Langman exercised the right of complete control. See Findings of Fact and particularly Finding No. 11. Whether this resulted in making Langman an independent contractor is immaterial in the sense of a technically accurate legal designation, but as regards the responsibility of Harrison to a third party, such as defendant Wainer, the legal result must be the same. That is, unless the nature of the conduct giving rise to Wainer's asserted cause of action was such that responsibility for the negligent performance thereof could not be delegated to another, Harrison would not be liable, and, therefore, plaintiff would incur no liability under its policy of insurance.

■ As to independent contractors, the law pertaining to which the court believes to be applicable, the Arkansas Supreme Court has stated, Arkansas Fuel Oil Co. v. Scaletta, 200 Ark. 645, 652, 140 S.W.2d 684, 688, quoting from Moore v. Phillips, 197 Ark. 131, 120 S.W.2d 722: " 'If there is nothing in the contract show-ing an intent upon the part of the employer to retain control or direction of the means or methods by which the party claiming to be independent shall perform the work, and no direction relating to the physical conduct of the contractor or his employees in the execution of the work, the relation of independent contractor is created. The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists' ".

It was further pointed out that: " 'Even though the contract itself creates the relation of employer and independent contractor, such relationship may be destroyed by conduct of the employer through direction of the means and methods of producing physical results; and this is a question of fact for the jury if there is substantial evidence to show that such conduct became operative' ". See, also: Rice v. Sheppard, 205 Ark. 193, 168 S.W.2d 198.

■ However, it is clear that the defense of independent contractor is not always effective. In one of the earlier Arkansas cases on this point, St. Louis, I. M. & So. Railway Co. v. Yonley, 53 Ark. 503, 507, 14 S.W. 800, 801, 9 L.R.A. 604, the court said:

"Mr. Cooley says: 'In general it is entirely competent for one having any particular work to be performed to enter into agreement with an independent contractor to take charge of and do the whole work, employing his own assistants, and being responsible only for the completion of the work as agreed. The exceptions to this statement are the following: He must not contract for that, the necessary or probable effect of which would be to injure others, and he cannot, by any contract, relieve himself of duties resting upon him as owner of real estate, not to do or suffer

to be done upon it that which will constitute a nuisance, and therefore an invasion of the rights of others.' * * *

"If one employs another to perform a work which from its nature is necessarily dangerous to the property of a third person, the employer cannot escape liability for the injury thereby done. In such cases, the injury flows from the * * * manner in which the act is done. * * * The right of recovery depends upon the inherent character of the act done,—whether it naturally endangered the property of appellee, if carefully performed. If it did, appellant would be liable. The burden to show that it did was upon the appellee. Whether he discharged it was a question that should have been submitted to the jury. We cannot say, as a matter of law, that such was the nature of the act. It would depend upon a variety of circumstances. It is easy to conceive a case in which burning brush on a right of way would be obviously dangerous to adjoining proprietors. It is just as easy to conceive one in which there would be no danger, except from the careless and reckless manner of the burning. The employer's liability, in each case, must therefore depend upon its own facts."

In Stout Lumber Co. v. Reynolds, 175 Ark. 988, 1 S.W.2d 77, the defendant, when sued for the obstruction of a stream, defended on the ground that an independent contractor had done the cutting which resulted in the obstruction. The verdict of the jury, returned under proper instructions, that defendant was liable for the acts of the independent contractor because the obstruction was a necessary or probable consequence of the work which the contractor was to perform, was affirmed.

In Hammond Ranch Corporation v. Dodson, 199 Ark. 846, 136 S.W.2d 484, 487, one of defendant's defenses to a suit brought by plaintiffs to recover for injuries to their stock caused by a spray drifting from defendant's cotton field into their pastures was that the dusting company was an independent contractor. In rejecting this defense, the court, quoting from S. A. Gerrard Co. v. Fricker, 42 Ariz. 503, 27

P.2d 678, 680, stated: "'As a general rule the employer is not liable for the negligence of an independent contractor. There are, however, certain exceptions to this general rule. One of such exceptions is that the law will not allow one who has a piece of work to be done that is necessarily or inherently dangerous to escape liability to persons or property negligently injured in its performance by another to whom he has contracted such work. This is especially true where the agency or means employed to do the work, if not confined and carefully guarded, is liable to invade adjacent property, or the property of others, and destroy or damage it.' "

In Aluminum Ore Co. v. George, 208 Ark. 419, 423, 186 S.W.2d 656, 658, the court stated: "Our decisions are that a business or enterprise operating in circumstances where people are invited to deal with it and to enter in furtherance of business intercourse, owes to the public a duty of care; and this duty is not abrogated or affected by the fact that at a particular time repairs are being made under an arrangment delegating the means and methods to an independent contractor."

And, in Giem v. Williams, Administratrix, 215 Ark. 705, 222 S.W.2d 800, the court, in rejecting a contention of the principal contractor that the excavation work had been sublet to an independent contractor (the injury and death arose out of blasting done by the sub-contractor), held that blasting was of such a nature that the duty of proper care could not be delegated.

Thus by virtue of his contract with Newberry, the law placed a duty upon Harrison to exercise ordinary care in the performance of the work so as not to negligently injure the person or property of certain third parties, of whom Wainer is one. The court has found and held that Harrison delegated to Langman the complete control over the means and methods of performance of the work. Whether by this delegation he discharged himself of the duty owed Wainer depends upon the nature of the acts or conduct giving rise to the alleged damages suffered by Wainer,

and the evidence before the court on this point is insufficient to enable the court to determine this matter. The allegations of Wainer's complaint in the state court concerning the alleged negligence, are: "That the defendants have been grossly negligent in carrying on their work aforesaid, in that they have permitted the ceiling of the first floor of the said structure to drop several inches, causing the first floor of the plaintiff's hotel to become lower, thereby resulting in a warping and spreading out of the floors, walls, and ceilings of the rooms operated by the plaintiff in his hotel business as hereinafter set forth; that the defendants have been grossly negligent in carrying out their work as aforesaid by reason of the fact that they have disconnected the plumbing, and disrupted the wiring and other services affecting the rooms hereinafter set forth and operated by the plaintiff in conjunction with his hotel business."

However, the court cannot determine whether Harrison is liable to Wainer from a consideration of the allegations of the complaint in the state court for the reason that the actual facts developed at the trial will control. See: Hardware Mut. Casualty Co. v. Hilderbrandt, 10 Cir., 119 F.2d 291. What the actual facts concerning the nature of the work giving rise to the alleged damages will be the court has no way of determining with certainty from the evidence before it. Certainly, upon the record here, the court cannot say as a matter of law that Harrison is not responsible for any negligence of Langman in the performance of the work.

The state court, wherein evidence concerning the nature of the work or conduct giving rise to the damages allegedly suffered by Wainer may be presented, is the proper court to make this determination. If it concludes that the nature of the work or conduct is not such as to bring it within the exceptions to the independent contractor defense, then by virtue of this court's finding and conclusion that Harrison completely delegated the control of the means and methods of performance to Langman, Harrison would not be liable, and, of course, plaintiff would incur no liability. However, by the terms of its policy, and in view of this determination by the court, plaintiff is obligated to defend Harrison in the state court suit.

Also, in view of certain exclusions in the policy, hereinafter discussed and upheld, it is possible Harrison could be charged with liability to Wainer not covered by the policy. That is, if the state court should determine that the damages arose out of activities falling within the exclusions of the policy, and were such that Harrison's duty for the exercise of ordinary care in their performance could not be delegated to an independent contractor, then Harrison would be subject to liability which plaintiff, under the policy, could not be called upon to assume. However, these matters will have to be resolved by the state court after a trial of the issues therein presented.

The court is also called upon to determine the coverage of the policy as regards Exclusions (g) (2) (c). It is therein provided that the policy does not apply to injury or destruction of property caused "by the collapse of or structural injury to any building or structure due to excavation, pile driving or caisson work or to moving, shoring, underpinning, raising or demolition of any structural support thereof," except as otherwise provided in Item 4. Although it is difficult to determine by an examination of the policy, apparently there is no dispute that Item 4 does not otherwise provide. Plaintiff contends, and requests the court to declare, that Exclusion (g) (2) (c) is effective to limit the coverage of this insurance policy in accordance with the terms thereof.

Harrison's contentions on this point are stated in his brief as follows: "(1) The Contractors' and Manufacturers' Public Liability Policy issued by the plaintiff to the defendant, Harrison, was a blanket policy, (2) the plaintiff is bound by the contract of its agents, Kimball-Disheroon Agency, Inc., and (3) Estoppel and Waiver."

The Court agrees that the policy is to be construed most favorably for

the insured and against the insurer. However, it cannot by construction do violence to the language of the policy or read into it something that is not there. The substance of Harrison's first contention is that the exclusions apply to rate and not coverage. Certainly they affect the rate, in that additional premiums are charged if they are removed in Item 4, but the plain language of the policy leaves the court no alternative but to conclude that they also apply to coverage. The language "This policy does not apply" can carry no other meaning.

As to the second contention, the court has found that Kimball and Disheroon were soliciting agents only. Concerning such agents the Supreme Court of Arkansas has said, Sadler v. Fireman's Fund Insurance Co., 185 Ark. 480, 481, 47 S.W.2d 1086: "The undisputed evidence showed that A. L. George was merely a soliciting agent of appellee. It has been uniformly held by this court that a soliciting agent has no authority to agree upon terms to be inserted in policies, or to change or modify or waive terms contained therein, and that the knowledge of a soliciting agent cannot be imputed to the company he represents."

And, as to the contention of waiver and estoppel, it is settled in Arkansas that waiver and estoppel are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom. This rule is to be distinguished from the rule that permits the assertion of waiver or estoppel to deny grounds of forfeiture. Metropolitan Life Insurance Co. v. Stagg, 215 Ark. 456, 221 S.W.2d 29; Standard Acc. Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794.

As the court understands the law of Arkansas, the only ground upon which it would be justified in holding that Exclusion (g) (2) (c) is not applicable and that Harrison has such coverage is an oral contract between Harrison and Wiest to that effect. The court has found, Finding No. 5, that Wiest at least had apparent authority to enter into oral contracts binding upon the plaintiff. Concerning this point, The Supreme Court of Arkansas said in American Casualty Co. v. Rightor, 212 Ark. 779, 785, 207 S.W.2d 736, 739: "The applicable rule is stated in 29 American Jurisprudence, p. 151, section 135, as follows: 'It is generally held that where otherwise valid, oral contracts of or for insurance entered into by general agents or by duly authorized agents acting in such respect within the apparent or ostensible scope of their authority are binding on the insurance company which they represent. * * * An agent authorized to make the necessary surveys, and negotiate and conclude all the terms of the contract, and to fill up and countersign policies, may bind his company by a parol contract to issue a policy.'"

However, while Kimball and Disheroon were advised of the nature of the work and furnished a copy of the plants and specifications, the facts do not reveal that such knowledge was conveyed to Wiest. It does not appear that he was advised of any shoring or other extra-hazardous work necessary to be done in accomplishing the job.

The facts are not sufficient to support a conclusion that an oral contract of broader coverage than the policy issued was entered into between Harrison and Wiest, the only representative of plaintiff involved herein who had authority to bind plaintiff in such matters.

The policy as written was one that might easily mislead the unwary and inexperienced. It required an expert to explain just what the coverage was. Harrison did all that any reasonable person would have done: he asked for full coverage and thought that he had it. Had he studied the policy in detail, it is very doubtful whether he could have ascertained, without advice from an expert, whether he was covered or not. However, the court has no alternative but to apply the law of Arkansas as it believes it to be, and must conclude that the policy does not apply to injury or destruction of property caused by the collapse of or structural injury to any building or structure due to excavation,

pile driving or caisson work or to moving, shoring, underpinning, raising or demolition of any structural support thereof.

As previously stated, defendant Langman filed a motion to dismiss on the ground that the court did not have jurisdiction of his person. It appears that Langman was served by having summons served on D. G. McCulloh, as agent for Langman, and also service was had on the Secretary of State under provisions of Ark.Stats.1947, Sec. 27–340. The requirements of that statute, "do any business or perform any character of work or service in this State shall * * * be deemed to have appointed the Secretary of State * * * upon whom process may be served in any action accrued or accruing from the doing of such business", have been met in this case. Under the facts hereinbefore set forth, Langman was "doing business" within the meaning of the above statute. Therefore, service of process was good, and Langman's motion to dismiss must be overruled.

One other contention should be considered. Harrison asks the court to retain jurisdiction for the purpose of receiving evidence on costs, expenses and attorney's fees. Attorney's fees are not granted in either law or equity proceedings in the state courts of Arkansas. Jarvis v. Southern Grocery Co., 63 Ark. 225, 38 S.W. 148; Federal Land Bank of St. Louis v. Craig, 176 Ark. 381, 3 S.W.2d 34; American Exchange Trust Co. v. Trumann Special School District, 183 Ark. 1041, 40 S.W.2d 770. This court in a diversity case, as this is, cannot grant them here. See: Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524.

Conclusions of Law

1

The court has jurisdiction of the parties and of the subject matter of this cause. Title 28 U.S.C.A. §§ 2201 and 1332.

Service on R. S. Langman, d/b/a C. H. Langman and Son, under the provisions of Ark.Stats.1947, Sec. 27–340, was perfected in accordance with the terms thereof, and was sufficient to give this court jurisdiction of the person of said Langman.

Therefore, Langman's motion to dismiss or in lieu thereof to quash return of summons should be overruled.

2

Any liability on the part of Gilford A. Harrison arising out of the performance of the J. J. Newberry remodeling job would be "liability imposed upon him by law" and would not be "liability assumed by the insured under any contract or agreement" within the meaning of Exclusion (c) of the insurance policy.

3

The policy of insurance applies only to damages caused by accident, but the provision covers any damages proximately caused by the negligence of or chargeable to the insured.

4

Plaintiff is obligated to defend Harrison in the State Court suit now pending in the Circuit Court of Garland County, Arkansas.

5

By virtue of his contract with the J. J. Newberry Co., Inc., the law places a duty upon Harrison to exercise ordinary care in the performance of the work contracted so as not to negligently injure the person or property of certain third parties, of whom Wainer is one. As appears from the Findings of Fact, Harrison delegated to R. S. Langman, d/b/a C. H. Langman and Son, the complete control over the means and methods of performance, and by so doing created, for purposes of determining liability to third persons, the relationship of employer and independent contractor. However, whether this delegation discharged Harrison of the duty owed Wainer depends upon the nature of the acts or conduct giving rise to the damages allegedly suffered by Wainer, and the evidence before this court is insufficient to enable it to determine whether Wainer's damages, if any, were proximately caused by negligent acts which under the laws of Arkansas were such as could not be delegated to an independent contractor.

If Wainer suffered damages from such non-delegable acts, then Harrison and Langman would be liable and the plaintiff would be liable to Harrison unless the damages were found to be the result of acts not covered by the terms of the policy as hereinafter set forth.

**6**

The policy of insurance herein involved does not apply to injury to or destruction of property caused by the collapse of or structural injury to any building or structure due to excavation, pile driving or caisson work or to moving, shoring, underpinning, raising or demolition of any structural support thereof.

If the damages suffered by Wainer, if any, were caused by the collapse of or structural injury to the building or structure occupied by him due to excavation, pile driving or caisson work or to moving, shoring, underpinning, raising or demolition of any structural support to said building, the plaintiff would not be liable to Harrison or to the other insured, J. J. Newberry Company, Inc., even though it should be determined by the State Court, under the facts developed in the trial of the Wainer case, that the acts excluded by the terms of the policy were of such a nature that the duty of the named insureds as to proper care could not be delegated.

**7**

R. S. Langman, d/b/a C. H. Langman & Son is not a named insured in the policy of insurance, and there is no privity of contract between the said Langman and the plaintiff. The plaintiff has no obligation of any kind or nature to the said Langman nor has it any duty to indemnify or hold harmless the said Langman by reason of any judgment which may be obtained against him by the defendant Wainer.

**8**

The record does not disclose any controversy between Langman and Harrison, and, therefore, the court makes no determination of any rights between Langman and Harrison that do not affect the other parties to this action.

**9**

Declaratory Judgment in accordance with the above is being entered, and one-third of the costs of this proceeding are adjudged against each of the defendants, Harrison and Langman, and one-third against the plaintiff.