Jimmy N. LOONEY, Clinton M. Hickman, Betty Cureton, Margaret Coon, Martha Cooper and R. T. Cooper, Appellants,

v.

**ALLSTATE INSURANCE COMPANY,**
Appellee.

No. 18851.

United States Court of Appeals
Eighth Circuit.

April 4, 1968.

Bill Penix, of Penix & Penix, Jonesboro, Ark., and Hartman Hotz, Fayetteville, Ark., for appellants.

Vincent E. Skillman, Jr., Skillman & Furrow, West Memphis, Ark., for Jimmy N. Looney.

G. D. Walker, of Frierson, Walker & Snellgrove, Jonesboro, Ark., and Seymour S. Rosenberg, Memphis, Tenn., for Clinton M. Hickman, were on the brief with Bill Penix, Jonesboro, Ark., and Hartman Hotz, Fayetteville, Ark., for Betty Cureton, Margaret Coon, Martha Cooper and R. T. Cooper.

J. C. Deacon, of Barrett, Wheatley, Smith & Deacon, Jonesboro, Ark., for appellee and filed brief.

Before VOGEL, BLACKMUN and LAY, Circuit Judges.

BLACKMUN, Circuit Judge.

Allstate Insurance Company instituted this diversity declaratory judgment action under 28 U.S.C. § 2201 against its insured, Jimmy N. Looney, and against Clinton M. Hickman, Betty Cureton, Margaret Coon, Martha Cooper and her husband, and Southern Farm Bureau Casualty Insurance Co. The case was tried to the court without a jury and on stipulated facts. Judge Young entered judgment granting Allstate the favorable declaratory relief it sought. The individual defendants appeal.

The litigation arises from a two-automobile collision near Marked Tree, Arkansas, on November 18, 1965. It concerns Allstate's coverage for Looney and its obligation to appear and defend him. One of the automobiles in the collision was a Cadillac owned by Hickman but driven by Looney and with Hickman as a passenger. The other was one driven by Mrs. Coon, with Miss Cureton and Mrs. Cooper as passengers. Hickman and the three women sustained serious personal injuries. Both vehicles were damaged.

In May 1964 Looney had a Tennessee mailing address but resided across the state line in Olive Branch, Mississippi. He was an independent truck driver and milk hauler. He applied to Allstate for comprehensive coverage on his 1962 truck-tractor which he used to pull a milk trailer. He indicated to Allstate that he would be hauling milk in Tennessee and Mississippi primarily for a named producers association and that his entire route did not extend beyond a 50 mile radius.

Looney's application was processed by Allstate's regional office. That office decided that a restrictive form of coverage would be issued. It classified the vehicle as "Class 4, Heavy Truck". The premium charged was one on file with the Tennessee Insurance Commissioner. With his application Looney signed an indorsement agreement reciting that the policy was to apply "only while the automobile is within a 50 mile radius of the limits of the city or town where the automobile is principally garaged".

The policy was issued effective May 15, 1964, for a one year term. It was in Allstate's "Illustrator" form known in

the trade as the 1955 basic automobile policy.[1] Allstate employed this form for commercial coverage on vehicles larger than a pickup truck and also for assigned risk vehicles. The policy, by a check in a box on its first page, described the purpose of the truck's use as "Commercial". Another box, denominated "Pleasure and Business", was not checked. A rider referred to the insured vehicle as one "classified as 'Commercial Milk Hauler'" and provided the 50 mile radius limitation "except for the occasional use of such automobile for personal, pleasure or family purposes beyond such 50 mile radius". Looney occasionally made some personal use of his truck in addition to his commercial use.

Among the contract's insuring agreements was a provision that if the insured is an individual and "owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy * * * with respect to said automobile applies with respect to any other automobile", subject to conditions not pertinent here. "Private passenger automobile" was defined to mean "a private passenger, station wagon or jeep type automobile, and also includes * * * any automobile the purposes of use of which are stated in the declarations as 'pleasure and business'". And in a section of the policy entitled "Conditions Applicable to All Coverages" the term "pleasure and business" was defined "as personal, pleasure, family and business use".

At the time Looney applied to Allstate he also owned a 1963 Ford passenger automobile which he regarded as his family car. The Ford was insured by Southern. Southern's policy covered Looney while he was driving another automobile. The monetary amount of Southern's coverage, however, was less than Allstate's.

The term of the Allstate contract was extended in due course to May 15, 1966. The policy thus was in effect at the time the November 1965 accident occurred. The site of the accident was beyond the 50 mile radius specified in the Allstate policy.

Looney gave notice of the accident to both Southern and Allstate. Southern determined that its policy afforded the terms of its coverage to Looney while he was driving the Hickman automobile. It undertook a routine investigation. Looney's report to Allstate was by telephone to its Memphis claims office on November 22. The report was taken by a clerk who completed a form from the information furnished by Looney. She confirmed Looney's coverages and the coverage card reflected the contract as an "Illustrator" policy. The report was referred to a claims supervisor.

Written statements were then taken from Looney and Hickman. The supervisor requested, as a part of usual administrative routine, that Allstate's clerical employees file an SR–21 form with the State of Arkansas. This is one required by the Arkansas Motor Vehicle Safety Responsibility Act, Ark.Stat.Ann. Title 75, Chapter 14, and, specifically, by §§ 75–1419 (Repl.1957 and 1967 Supp.).[2] The form was dated December 6, 1965, was filed by Allstate on December 8, and was finally accepted as refiled on January 6, 1966. It named Hickman and Looney as the Cadillac's owner and operator, respectively; gave the date and place of the accident and the Allstate policy number; and also gave notice that

---

1. In contrast, over 95% of the claims handled in Allstate's Memphis office are in connection with Allstate's "Crusader" contract. That policy extends coverage to a named insured when using other automobiles. It also extends collision coverage to another vehicle under the circumstances of the accident of November 1965.

2. The trial court found:
   "An SR–21 is a document which gives notice of the existence of liability insurance of a driver involved in an auto accident and which is required by Arkansas statute to be filed along with the report of the accident. The form must be signed by the liability insurance carrier within fifty days of the accident and is used to determine the need for and amount of security to be posted by a driver.

the policy was in effect on the date of the accident and applied to Looney as operator. At that time no coverage question was detected by Allstate and no notice of reservation of rights was given to Looney.

Hickman made claim that his Cadillac be repaired under the collision coverages of Looney's policies with Allstate and Southern. Allstate assumed that its policy extended this protection and that, with dual coverage, it and Southern should share the collision loss equally. It agreed with Southern and Hickman on a loss figure and paid half ($687.50) of the amount to Looney and Hickman by draft dated January 27, 1966.

On January 25, 1966, Miss Cureton sued Hickman and Looney in federal court in the Eastern District of Arkansas for $500,000. Service was effected and notice thereof received by both Allstate and Southern. The two companies jointly employed the attorneys who represent Allstate on this appeal. These attorneys filed a timely answer for Looney[3] and communicated with Hickman's lawyer about his plans to file pleadings for Hickman. Allstate, by letter, advised Looney that the coverage under its policy was less than the amount claimed in the Cureton suit and that it was his privilege to have a personal attorney at his own expense.

On February 3, 1966, Mrs. Coon and Mr. and Mrs. Cooper sued Hickman and Looney in the same court for damages aggregating $250,000. Service was effected and notice given to Allstate and Southern. They asked the same lawyers to provide the defense to this second suit. Again Allstate advised Looney by letter of its coverage limits. On February 7 Allstate wrote Mrs. Coon's attorney concerning salvage bids for her automobile.

Under Allstate's claims procedure, a duplicate of the file is referred to the regional claims office whenever a supervisor evaluates exposure in excess of a prescribed dollar amount. Such an evaluation was made for the claims against Looney. Consequently, on February 15 a copy of the file went to the regional office in Jackson, Mississippi. On February 17 a claims analyst in that office advised Memphis that the coverage provided by Looney's policy would not apply while he was driving Hickman's automobile. A Memphis supervisor immediately called the insurers' attorneys. Their reaction was that the exclusion seemed applicable and they recommended to Allstate that a reservation of rights letter be sent to Looney. Allstate issued such a letter on February 17. On or about February 21 Allstate gave notice to Southern of the coverage question. It was agreed that this presented a conflict of interests and it was decided that Southern would secure other counsel. Southern employed another lawyer to represent the interest of its insured in the defense of both cases. The first attorneys furnished complete information to a newly retained lawyer. He filed a timely pleading on behalf of Looney in the second case.

On February 22 oral notice of the coverage problem in the Allstate policy was given to the attorneys for Miss Cureton, Mrs. Coon, the Coopers, and Hickman. Two days later Hickman filed his answer in both suits and a $250,000 cross-complaint against Looney. The attorneys first retained withdrew as counsel for Looney in the Cureton suit. The attorney employed by Southern has since represented Looney's interests in both cases.

On March 1 Allstate wrote Looney disclaiming and denying all liability or obligation to him or to others under the Allstate policy. On March 11 it wrote Southern to the effect that the Allstate policy provided no coverage for the Hickman vehicle and that Allstate should be reimbursed to the extent of its $687.50

---

3. The trial court described this as "rather a customary answer filed by members of the Arkansas bar in cases of this type", as containing no damaging admissions, and as not prejudicing Looney in any way. We could not characterize it otherwise.

payment when Southern settled Hickman's collision loss.

In July Allstate's attorneys made inquiry as to the filing of an SR–21. Allstate's Memphis office had not retained a copy of the form and could find no record of any disclaimer. The lawyers wrote the Arkansas Motor Vehicle Division. On July 29 Allstate, at the suggestion of counsel, also wrote the Division, and told it of the absence of coverage for Looney while driving the Cadillac, and that advice to this effect was given Looney on March 1 and the SR–21 should be considered as withdrawn. On August 24 the Division returned one copy of the SR–21 to Allstate with the observation that Looney "will, of course, now be required to file proof of financial responsibility for this accident by some other means".

Judge Young's opinion, containing findings and conclusions, was rendered from the bench. It is not formally reported. Supplemental findings were later filed. The court recited that the case was important and presented some issues of first impression in Arkansas and held that there was no ambiguity in the Allstate policy; that Allstate, in the early stages of its investigation, was negligent in its appraisal of coverage; that there is no indication of prejudice by Allstate's voluntary assumption of the defense for a time; and that the general rules of estoppel are applicable and there is nothing in the facts which justifies a holding that these principles make Allstate liable under its policy to any of the defendants.

The individual defendants argue here that the trial court erred in granting Allstate favorable declaratory relief because (1) the policy clearly afforded protection or was ambiguous and construction should be in favor of the insured; (2) by filing the SR–21 Allstate became bound to afford coverage; and (3) Allstate waived any right it might have possessed to deny coverage or was estopped to deny it.

■ A. The issue of ambiguity. The claim that an insurance policy is ambig-

uous and, hence, that it is to be construed in favor of the insured is, of course, a familiar and constantly recurring one. This court has repeatedly made reference to the "classical statement" of the rule in Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416 (1932). But we have repeatedly emphasized, as the Supreme Court did in *Bergholm*, that this canon of construction furnishes no warranty for importing an ambiguity which does not exist or for forcing an unnatural or perverted meaning from plain words under the guise of construction. We have said this in cases emerging from Arkansas. Habaz v. Employers' Fire Ins. Co., 243 F.2d 784, 787 (8 Cir. 1957); Jefferson Ins. Co., etc. v. Hirchert, 281 F.2d 396, 400 (8 Cir. 1960); State Farm Mut. Auto. Ins. Co. v. Pennington, 324 F.2d 340, 342–343 (8 Cir. 1963); Peacock & Peacock, Inc. v. Stuyvesant Ins. Co., 332 F.2d 499, 504 (8 Cir. 1964). We have said it, too, in cases arising from other states. Massachusetts Bonding & Ins. Co. v. Julius Seidel Lumber Co., 279 F.2d 861, 865–66 (8 Cir. 1960); Roth v. Western Assur. Co., 308 F.2d 771, 774 (8 Cir. 1962); Hartford Acc. & Indem. Co. v. Kuipers Constr. Co., 327 F.2d 333, 335 (8 Cir. 1964). The Supreme Court of Arkansas has said the same thing. Mercury Ins. Co. v. McClellan, 216 Ark. 410, 225 S.W. 2d 931, 933, 14 A.L.R.2d 806 (1950); McKinnon v. Southern Farm Bureau Cas. Ins. Co., 232 Ark. 282, 335 S.W.2d 709, 710 (1960).

The rule, thus, is clear enough. The defendants, however, say that "the core" of the case is whether Looney owned a " 'private passenger automobile' covered by this policy"; that if the use of the insured vehicle included pleasure and business, then it was a private passenger automobile and coverage is present; and that by the very terms of the policy "commercial" contemplates occasional use for personal and pleasure purposes.

■ The argument is interesting but it does not persuade us. The entire emphasis here—Looney's application, the

processing of that application, the radius limitation, the use of the "Illustrator" form when the broader "Crusader" form was widely employed, and the language of the contract itself—is consistently on the commercial activity of the insured vehicle. To be sure, it also afforded coverage, by the rider, when the insured vehicle itself was subjected to occasional pleasure use, but the application of the coverage "to any other automobile" exists if, and only if, the insured "owns a private passenger automobile covered by this policy". For coverage to exist, then, Looney's 2-ton truck-trailer must qualify as a private passenger automobile. This is too much. The 2-ton truck-trailer is hardly "a private passenger, station wagon or jeep type automobile", within the policy's primary definition. And we are not persuaded that it qualifies under the policy's secondary definition, that is, "any automobile the purposes of use of which are stated in the declarations as 'pleasure and business' ", when the pleasure and business box on the contract's first page was not checked and when the contract sounds throughout of commercial use as contrasted with pleasure and business use. We would have to stretch to say that this policy affords driving-other-car coverage or that it is ambiguous. It covered only the truck while restrictively used in the specified territory and while occasionally used personally. The policy provisions are clear and are not to be ignored or interpreted, apart from their plain meaning, on any theory of insurance economics.

The defendants give repeated emphasis to the fact that the policy includes a paragraph as to "Purpose of use defined" as a part of the portion of that policy entitled "Conditions Applicable to All Coverages". They ask rhetorically why this definition was included. It seems obvious that it was there because the "Pleasure and Business" box on the contract's first page was subject to being checked. But in Looney's policy it was not checked.

The identical use-of-other-automobiles clause was at issue in Champagne v. Southern Farm Bureau Cas. Ins. Co., 170 So.2d 226 (La.App.1964). Although the court recited additional reasons for its holding, it rejected the argument presently advanced when it said, p. 233,

> "Such provision applies where a private passenger automobile is insured and does not apply when the policy covers commercial vehicles such as trucks."

The same holding is implicit in Cornelius v. Fields, 122 So.2d 704, 707 (La.App. 1960). See 7 Am.Jur.2d, Automobile Insurance, § 105 (1963).

B. The issue of the effect of the filing of SR–21.

Counsel agree that on this issue Arkansas law applies.

The trial court found that Allstate's initial extension of coverage to Looney was by mistake and inadvertence. This finding is not challenged by the defendants. The defendants concede that the Arkansas courts have not yet decided the legal effect of the filing of an SR–21. They stress that the form affirmatively stated that a policy issued to Looney was in effect at the time of the accident and applied to Looney as operator; that the Arkansas statute is meant to enforce upon insurers their duty to honor and respond to their policies in regard to accidents in the State; that the 50 day filing period affords ample time for the insurer to determine its liability; and that the Act is not for the sole benefit of the insured but it also intended as protection for the injured.

In the absence of controlling Arkansas authority which goes that far, we are not prepared to hold that, apart from general waiver and estoppel principles (which we consider under the next point), the mere filing of the SR–21 serves to affect the contractual rights of the parties and to bind an insurer when it would not otherwise be obligated. We read § 75–1419 as providing an alternative method of protecting one's driving privilege and of satisfying the Act's requirements for the deposit of security when an accident occurs. Section 75–

1424 and the sections which succeed it call for the deposit of security. Section 75–1426 (b) makes an exception for the non-owner driver if appropriate non-owner coverage is in effect. Section 75–1419 itself refers to the inapplicability of the requirements for the deposit of security "by reason of the existence of insurance or other exceptions". This statutory plan stops short of enlarging an insurer's obligation and shrinking its contract rights by depriving it of any non-coverage defense it may possess. The district court so held and we have no reason to disagree before an authoritative Arkansas decision to the contrary is on the books.

The weight of authority elsewhere under similar statutes is to this effect. Examples are Insurance Co. of North America v. Atlantic Nat'l Ins. Co., 329 F.2d 769 (4 Cir. 1964) (Virginia law; incorrect information in SR–21); Connell v. Indiana Ins. Co., 334 F.2d 993 (4 Cir. 1964) (Virginia law; mere filing of SR–21 did not waive a defense of non-cooperation of which insurer was not then aware); Fidelity & Cas. Co. of New York v. McConnaughy, 228 Md. 1, 179 A.2d 117, 120–121 (1962) (breach of cooperation clause); Seaford v. Nationwide Mut. Ins. Co., 253 N.C. 719, 117 S.E.2d 733, 737, 85 A.L.R.2d 496 (1961) (denial of coverage for business use); Schaffer v. Mill Owners Mut. Ins. Co., 242 Ore. 150, 407 P.2d 614, 616–17 (1965) (filing of SR–21 by inadvertence and mistake). See Farm Bureau Mut. Ins. Co. v. Geer, 107 N.H. 452, 456, 224 A.2d 580 (1966); State Farm Mut. Auto. Ins. Co. v. Hubbard, 272 Ala. 181, 129 So.2d 669 (1961); Marley v. Lewis, 189 Kan. 658, 369 P.2d 783 (1962); the appendix to Royal Indem. Co. v. Clingan, 364 F.2d 154, 159–160 (6 Cir. 1966); Hoosier Cas. Co., etc. v. Fox, 102 F.Supp. 214, 224 (N.D.Iowa 1952).

We recognize that contrary implications may be read into certain Washington and Wisconsin cases. See LaPoint v. Richards, 66 Wash.2d 585, 403 P.2d 889 (1965) (where, however, the court observed, p. 893, "This is not a situation where it is sought to impose upon the insurance company which files an SR 22 form a liability greater than that originally contracted"); Behringer v. State Farm Mut. Auto. Ins. Co., 275 Wis. 586, 82 N.W.2d 915 (1957); Kurz v. Collins, 6 Wis.2d 538, 95 N.W.2d 365, 372–373 (1959). It is interesting to note that the Wisconsin statute was amended in 1957, apparently as a result of the Behringer decision, and that Wisconsin cases concerning accidents since the change may preserve the insurer's defense. Bean v. Kovacik, 10 Wis.2d 646, 103 N.W.2d 899, 902 (1960); Hain v. Biron, 26 Wis.2d 377, 132 N.W.2d 593 (1965); Hein v. State Farm Mut. Auto. Ins. Co., 29 Wis. 2d 702, 139 N.W.2d 611, 614–615 (1966).

In any event, we are satisfied that the trial court's conclusion here, which impliedly is to the effect that the Washington and Wisconsin cases are not representative of Arkansas law, is not inappropriate.

■ C. The issue of general waiver and estoppel. The defendants, and presumably Looney in particular,[4] here urge that what Allstate did was done deliberately; that "no one will ever know" what harm was done by Allstate's actions; that the insurance company had sole control of the cases at a crucial period and for three months; and that what is important, in determining whether a detriment could, not did, occur, is what might have been done.

■ Allstate suggests that the law of Mississippi controls the issue of waiver and estoppel because Looney lived and maintained a business there. The defendants assert that "Arkansas alone has the principal interest: place, parties, SR–21, and financial responsibility for the insurer", and urge that Arkansas law be applied. We need not decide this conflicts question for we conclude that the defendants cannot prevail even under

---

4. Looney clearly has status to argue this issue. We therefore need not concern ourselves about the status of the other individual defendants.

the law of Arkansas and, furthermore, that the law of the two states in this area is essentially the same.[5] See Bryan v. Aetna Cas. & Sur. Co., 381 F.2d 872, 875 (8 Cir. 1967).

Clearly Allstate placed itself in these cases. It had been in touch with Looney. It had directed an investigation. It confirmed coverage. It took statements from Looney and Hickman. It sent in the SR–21. It filed an answer for Looney in the Cureton suit. It paid half the damage sustained by Hickman's Cadillac. But when the Jackson claims analyst made his analysis, Allstate's activity came to an abrupt halt. Looney, Southern, and the attorneys for the defendants were notified of the reversal of direction. Southern forthwith retained other counsel for Looney and Allstate gave that counsel complete information.

Had Allstate passed the point of no return? We think not. General principles of waiver and estoppel, enunciated in Arkansas, indicate that it had not.

■ The Arkansas law is clear that, in contrast to the situation where a forfeiture of coverage is involved, waiver and estoppel usually cannot operate to extend coverage where none exists under the contract. Standard Acc. Ins. Co. v. Roberts, 132 F.2d 794, 798 (8 Cir. 1942); Montgomery v. M. F. A. Mut. Ins. Co., 250 F.2d 357, 361 (8 Cir. 1957); Peacock & Peacock, Inc. v. Stuyvesant Ins. Co., supra, p. 505 of 332 F.2d; Standard Acc. Ins. Co. v. Wilmans, 214 F.Supp. 53, 63 (E.D.Ark.1963); Kinard v. Mutual Benefit Health & Acc. Ass'n, 108 F.Supp. 780, 784–785 (W.D.Ark.1952); American Cas. Co. v. Harrison, 96 F.Supp. 537, 550 (W.D.Ark.1951); Bankers Nat'l Ins. Co. v. Hembey, 217 Ark. 749, 233 S.W.2d 637, 640 (1950); Metropolitan Life Ins. Co. v. Stagg, 215 Ark. 456, 221 S.W.2d 29, 32 (1949); Hartford Fire Ins. Co. v. Smith, 200 Ark. 508, 139 S.W.2d 411, 413

(1940). See C & L Rural Elec. Coop. Corp. v. Kincade, 183 F.Supp. 935, 940 (N.D.Miss.1960). The dictum which appears in Western Cas. & Sur. Co. v. Independent Ice Co., 190 Ark. 684, 80 S.W. 2d 626, 627 (1935), and which is stressed by the defendants here, was fully considered and rejected by this court in Standard Acc. Ins. Co. v. Roberts, supra, p. 799 of 132 F.2d. In view of the later Arkansas cases there and herein cited, that dictum appears to have lost whatever contrary significance its language might once have possessed.

■ In addition, in Arkansas one of the conditions for the invocation of estoppel is prejudice or a change of position to one's detriment. James Talcott, Inc. v. Associates Discount Corp., 302 F.2d 443, 446 (8 Cir. 1962); Greif Bros. Cooperage Corp. v. United States Gypsum Co., 341 F.2d 167, 173 (8 Cir. 1965); United States v. Thompson, 272 F.Supp. 774, 784 (E.D.Ark.1967); American Cas. Co., etc. v. Hambleton, 233 Ark. 942, 349 S.W.2d 664, 667 (1961).

Some states more broadly apply the estoppel principle and use it to extend coverage in a situation where the insurer, without reservation of rights, has assumed vital control of a case. See, for example, Salerno v. Western Cas. & Sur. Co., 336 F.2d 14 (8 Cir. 1964). But even that result rests on prejudice or waiver. And other cases point out that this rationale does not apply where the insurer has withdrawn at a time and under circumstances where the insured is left an adequate opportunity to defend. See Boulet v. Millers Mut. Ins. Ass'n, 362 F.2d 619, 623 (8 Cir. 1966), and cases cited.

Judge Young specifically found that Allstate's action caused no prejudice to Looney or to any of the other defendants and that their position was not materially altered for the worse in any way. On

5. The Mississippi cases favor Allstate's position here. Employers Fire Ins. Co. v. Speed, 242 Miss. 341, 133 So.2d 627, 629 (1961); Frank Gardner Hardware & Supply Co. v. St. Paul Fire & Marine Ins. Co., 245 Miss. 320, 148 So.2d 190, 193, 4 A.L.R.3d 1190 (1963); Morris v. American Fid. Fire Ins. Co., 253 Miss. 297, 173 So.2d 618, 623 (1965); and Hartford Acc. & Indem. Co. v. Lockard, 239 Miss. 644, 124 So.2d 849 (1960).

the record we certainly cannot say that these findings are clearly erroneous, for we, too, perceive no detriment or adverse change of position. The argument as to what might have occurred seems to us to be based on speculation.

These declaratory judgment defendants were seriously injured in their unfortunate accident. That fact, however, cannot serve to change the applicable and governing legal principles and to compel Allstate to pay their claims.

Affirmed.