MARGIE HILL et al., Respondents, v. RUDOLPH V. JOHNSON et al., Defendants.

HARTFORD ACCIDENT AND INDEMNITY Co., Respondent; and WILLIAM QUICK et al., Appellants.

FREDA MORROW, Respondent, v. RUDOLPH V. JOHNSON et al., Defendants; HARTFORD ACCIDENT AND INDEMNITY Co., Respondent; and WILLIAM QUICK et al., Appellants.

Second Department, December 21, 1970.

*Raymond J. MacDonnell* (*Philip Hoffer, Rose L. Hoffer* and *Peter T. Affatato* of counsel), for appellants.

*Schaffner & Schilling* (*Joseph L. Schilling* of counsel), for Hartford Accident and Indemnity Company, respondent.

MUNDER, J. In these consolidated actions the appeal is from a judgment which declared that (1) on September 2, 1967 there was no automobile liability insurance policy in effect issued to the defendant Johnson by the defendant Hartford Accident and Indemnity Co. ("Hartford") and thus no obligation on the latter to defend or pay in certain other actions by the plaintiffs arising out of an automobile accident involving Johnson which occurred on that date; (2) there was a valid automobile liability insurance policy in effect on that date, issued to the defendant Quick by the defendant Empire Mutual Insurance Co. ("Empire"); and (3) by reason of the uninsured motorist indorsement on the latter policy Empire was obligated to accept the plaintiffs' claims.

The essential facts are not disputed. On or about April 15, 1966 the defendant Rudolph V. Johnson applied to the defendant James F. Smith, Inc. ("Smith") for an automobile liability insurance policy. Smith was a broker-producer for seven insurance companies, including Hartford and the Ætna Casualty and Surety Company ("Ætna"). The normal procedure in the Smith office was to telephone the insurer with whom the policy was sought to be placed to ascertain whether the prospective insured was an acceptable risk. If so, Smith would accept the insured's application and issue him a certificate of insurance (form FS-1). The certificate would then be presented to the State Motor Vehicle Bureau as "proof of financial security" so that the motor vehicle in question could be registered and license plates issued (see Vehicle and Traffic Law, § 312).

In Johnson's case, a Smith employee telephoned Ætna to place the order, Johnson was accepted, and Ætna issued him a policy. However, the Smith employee erroneously gave Johnson an FS-1 form which indicated that Hartford was the insurer. Apparently the error stemmed from the fact that Smith had been sup-

plied with FS-1 forms by several insurers. These forms were alike except for the name of the insurer. Thus, a Hartford form was filled out for Johnson and filed with the Motor Vehicle Bureau. But no policy was ever ordered from Hartford for Johnson; and Hartford never issued him any policy.

Johnson obtained his license plates on April 20, 1966. The Ætna policy, running from April 15, 1966 to April 15, 1967, was sent to Smith, which notified Johnson that the policy could be picked up when paid for. Johnson never paid and Ætna terminated the policy effective July 1, 1966. Johnson was notified of the termination and, in addition, Ætna filed an FS-4 form (Notice of Termination of Insurance). Nothing was done, however, to cancel the Hartford FS-1 certificate.

More than a year later, on September 2, 1967, the plaintiffs were injured while passengers in a motor vehicle owned and operated by the defendant William Quick. The Quick vehicle collided at a Brooklyn intersection with the vehicle owned by Johnson but driven by someone else. At the time, Quick's vehicle was insured by the defendant Empire Mutual Insurance Co. ("Empire") and the latter's policy contained the standard uninsured motorist indorsement.

The Special Term held that it was this indorsement to which the plaintiffs must look for recovery; and in my opinion the holding was correct.

The appellants, Empire and Quick, take the position that the FS-1 certificate of insurance is the equivalent of an automobile liability policy and that Hartford is therefore liable to defend and pay because of its failure to cancel the FS-1 filed by Johnson. I note parenthetically that the plaintiffs took this same position at the Special Term but have not appealed that court's rejection of it. To support their claim, the appellants rely upon *Teeter* v. *Allstate Ins. Co.* (9 A D 2d 176, affd. 9 N Y 2d 655).

The holding in *Teeter,* namely, that the defendant insurer's common-law right of rescission *ab initio* for fraud did *not* survive the enactment of section 93-c of the Vehicle and Traffic Law (now § 313), is of little help to the appellants (see *Teeter* v. *Allstate Ins. Co., supra,* pp. 180, 185). They cite *Teeter,* however, for the following statement taken from the opinion (*supra,* p. 181): "Once a certificate of insurance under section 93-b has been issued by the insurance company and filed with the Commissioner, the *contract of insurance* ceases to be a private contract between the parties. A supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions" (emphasis added). I emphasize the phrase "contract of insurance" because that is what

the instant case is all about and that is what completely undermines the appellants' position. A certificate of insurance is *not* a contract of insurance. A certificate of insurance, as subdivision 5 of section 311 of the Vehicle and Traffic Law clearly states, is merely *evidence* that a contract has been issued. At bar, Hartford never issued a contract to Johnson and neither *Teeter* nor any other authority cited by the appellants even suggests that Hartford is barred from showing that fact. The appellants, in effect, seek to use the certificate of insurance as a basis for independent liability. This cannot be done. The certificate is conditioned upon the issuance and existence of a policy (see *Reese* v. *Hartford Acc. & Ind. Co.*, 4 Misc 2d 947, 948, affd. 3 A D 2d 1000).

Under the facts at bar, on the day of the accident, Johnson's car was being operated illegally (see *Teeter* v. *Allstate Ins. Co., supra*, p. 185). More than a year prior thereto, the liability policy on this automobile was terminated by Ætna; and Johnson was so notified. He did not surrender his certificate of registration and license plates. His vehicle was, therefore, specifically within the purview of the Motor Vehicle Accident Indemnification Corporation Law (Insurance Law, art. 17-A) namely, "motor vehicles registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance" (Insurance Law, § 600, subd. [2], cl. 3). This clearly makes applicable the uninsured motorist indorsement in Quick's policy with Empire.

The appellants also urge estoppel as a basis for holding Hartford liable, citing *Downing* v. *Allstate Ins. Co.* (43 Misc 2d 215). I fail to see any grounds for estoppel here. Estoppel rests on the word or deed of one, on which another rightfully relies, changing his position to his injury (see *Triple Cities Constr. Co.* v. *Maryland Cas. Co.*, 4 N Y 2d 443). Here, Hartford neither said nor did anything to cause the other parties involved to change their positions. It issued no policy and it learned of the mistake regarding the FS-1 form only months after the accident. At the time of the accident, Johnson's policy with Ætna had been terminated for over a year and Johnson knew it.

The judgment appealed from should be affirmed, with costs to the respondent Hartford Accident and Indemnity Co.

HOPKINS, J. (concurring in the result). I distinguish between the rights of the plaintiffs and the rights of the appellant Empire. As this case reaches us, only the rights of Empire concern us, since the plaintiffs did not appeal.

Initially, Hartford was bound by the acts of Smith, its producer. True, by error of Smith, Hartford never knew that the

producer had issued an FS-1 form which certified Hartford as the insurer of Johnson (Vehicle and Traffic Law, § 312). But by permitting Smith as a matter of practice to issue the FS-1 form, upon which its name was imprinted as insurer and which had been furnished to Smith by it, Hartford made Smith its agent for that limited purpose. Thus, Hartford could be held responsible for the error of Smith, since it could reasonably be foreseen that errors might occur in the issuance of the form.

In the ordinary course of events, neither the plaintiffs nor Empire could take advantage of Hartford's responsibility (cf. *Perry* v. *New York Life Ins. Co.*, 22 N. Y. S. 2d 696). But Hartford's responsibility under the events at bar is not ordinary, for it is engaged in business which the State has declared to be of high public importance — '' that motorists shall be financially able to respond in damages for their negligent acts,'' a purpose which '' can best be served * * * by private enterprise operating in a competitive market to provide proof of financial security through methods prescribed herein '' (Vehicle and Traffic Law, § 310, subd. [2]). Hartford, operating in a competitive market, chose to permit Smith to issue the form which certified it as the insurer of Johnson (Vehicle and Traffic Law, § 311, subd. 5). Without the FS-1 form, Johnson could not have obtained the registration of his automobile or the license plates by which he could drive in New York. New York relied on the certificate that insurance had been issued; and, under the statute, any person injured by Johnson's negligence in driving his automobile likewise relied (*Teeter* v. *Allstate Ins. Co.*, 9 A D 2d 176, affd. 9 N Y 2d 655; *Tomala* v. *Peerless Ins. Co.*, 20 A D 2d 206, affd. 14 N Y 2d 862; *Downing* v. *Allstate Ins. Co.*, 43 Misc 2d 215).

Under this analysis, the plaintiffs might well have succeeded against Hartford. But Empire stands in a different position. Empire is not an injured person; nor does it represent an injured person. Its status is that of an insurer whose liability arises as an uninsured motorist carrier (Insurance Law, § 167, subd. 2-a), a liability under an indorsement which exists independently of the main policy to which it is annexed and for which an additional premium was collected (*Matter of Knickerbocker Ins. Co. [Faison]*, 22 N Y 2d 554). Hartford's liability to the plaintiffs rests on principles of estoppel arising out of the State's solicitude for persons injured by the negligent operation of automobiles. That, however, does not mean that a policy of insurance issued by Hartford to Johnson in fact existed.

The negligence of Smith traceable to Hartford through the theory of agency creates the fiction of insurance by the application of the equitable doctrine of estoppel. That is to say, Hart-

ford is liable to an injured party as if a policy of insurance had duly been issued to Johnson. The fiction of insurance is employed to carry out the public policy of the State. Yet the public policy clothes only the injured party and not the public generally (cf. *People's Trust Co.* v. *Smith*, 215 N. Y. 488, 491). There is no privity between Empire and the plaintiffs that would allow the fiction of insurance to benefit Empire (cf. *Meeder* v. *Provident Sav. Life Assur. Soc. of N. Y.*, 171 N. Y. 432). Hence, Empire may not say that it is not liable to the plaintiffs because insurance is in existence which covers them.

Aside from a consideration of these aspects of the principle of estoppel, other reasons appear which bar a reversal of the judgment. As between Empire and Hartford, both insurance carriers, the equities favor Hartford. Empire has been paid for the coverage which it assumed; Hartford has not. Hartford's negligence at best is vicarious; and even its liability to the plaintiffs would not have come into being if, upon the notice of the termination of insurance by Ætna filed with the Commissioner of Motor Vehicles, the registration of Johnson's automobile had been canceled and the license plates surrendered (Vehicle and Traffic Law, § 313).

Accordingly, I concur in the result.

CHRIST, P. J., and MARTUSCELLO, J., concur with MUNDER, J.; HOPKINS, J., concurs in result, in an opinion, in which RABIN, J., concurs.

Judgment of the Supreme Court, Kings County, entered February 18, 1970, affirmed, with costs to respondent Hartford Accident and Indemnity Co.