**Larry TILLEY, By and Through His Guardian and Conservator Vivian TILLEY, Appellants,**

v.

**The HOME INSURANCE COMPANY, Appellee.**

No. 86–767.

Supreme Court of Iowa.

July 22, 1987.

Rehearing Denied Sept. 23, 1987.

Stuart M. Pepper, Des Moines, for appellants.

Katherine E. Schmidt and William Koehn of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for appellee.

LARSON, Justice.

Larry Tilley was injured by a driver allegedly intoxicated by alcohol purchased at a tavern called Ferg's in Grand Junction, Iowa. Tilley sued Ferg's under our dramshop statute, Iowa Code § 123.92 (1985), and the question arose whether Ferg's was covered by a dramshop insurance policy issued by City Insurance Company. (City Insurance Company is a subsidiary of The Home Insurance Company. Because Home Insurance is the named defendant here, we will refer to the insurer simply as Home Insurance.) Tilley filed a declaratory judg-ment action against Home Insurance to determine if there was coverage.

The district court ruled that, although a policy of insurance had been tendered by Home Insurance to the owners of Ferg's, they had rejected the policy and decided to take their insurance business elsewhere. The court ruled that Home Insurance was therefore not liable to indemnify Ferg's in the dramshop action, despite the fact that a certificate of insurance on file with the Iowa Beer and Liquor Control Department showed a policy with Home Insurance was in effect. Tilley appealed, and we now affirm.

The district court found the following facts. Mike and Jean Ferguson, as owners and operators of Ferg's, were required to have dramshop liability insurance as a condition of their obtaining a liquor license. See Iowa Code § 123.92. Fergusons initially obtained dramshop insurance from Home Insurance for the period of November 1, 1983, to November 1, 1984. (On appeal, Tilley challenges this finding, asserting that the record shows the period of the policy was from September 1 to November 1, 1984. In any event, we do not believe this is material; under either version, the initial insurance coverage by Home Insurance terminated on November 1, 1984.)

The district court found that, prior to the November 1, 1984, expiration date of the original policy, Home Insurance prepared a renewal policy to be effective for an additional year, beginning November 1, 1984. It found, however, that Fergusons rejected that coverage in favor of a policy with another company, Acceptance Insurance Company, which was to cover the same year. It found that, while the Acceptance insurance policy was in force at the time of the accident, April 7, 1985, Home Insurance's policy was not. Fergusons had not accepted the policy tendered by Home Insurance, nor had they paid a premium for it, according to the findings.

The rules of the Iowa Beer and Liquor Control Department require that the dramshop insurance company furnish the department with a certificate of insurance to verify the existence of coverage for the

licensee. 150 Iowa Admin. Code 5.8(1) (now found in 185 Iowa Admin. Code 5.8(1)). Such a certificate was filed on behalf of Fergusons by both Home Insurance (which was anticipating that the renewal policy would be accepted) and by the actual insurer, Acceptance Insurance Company, prior to the November 1, 1984, expiration date of the original policy. On the strength of these certificates, Fergusons' license was retained in force.

When this accident occurred, Home Insurance did not actually have a policy in force for Fergusons, despite the fact its certificate on file with the department showed that it did.

■ We point out initially that this is not a case where Home Insurance, by accident or otherwise, had failed to retrieve a certificate of insurance which resulted in an unwarranted reliance by the department in its issuance of a new license. Had this been the case, there might be a basis for an estoppel argument by Tilley. *See, e.g., Hoosier Gas Co. v. Fox,* 102 F.Supp. 214, 238–40 (N.D.Iowa 1952); 6B J. Appleman, *Insurance Law and Practice* § 4297, at 294–95 (1979). In the present case, however, there was no detrimental reliance upon the erroneous filing of the certificate because the policy with Acceptance Insurance Company, which was in force at the time, was sufficient to permit the issuance of the license to Fergusons.

■ Despite Tilley's protestations that the district court's fact-findings are without sufficient support in the record, we disagree. We believe there was substantial evidence that the policy tendered by Home Insurance was rejected by Fergusons, that they made no premium payment on it, and that Home Insurance's failure to rescind its certificate of insurance was a result of error or oversight. It further shows there was a valid policy with Acceptance at the time of Tilley's accident. The question thus boils down to whether a claim may be pursued against Home Insurance based solely on its certificate of insurance, without an underlying insurance policy.[1]

In an analogous case, *Hill v. Johnson,* 35 A.D.2d 407, 316 N.Y.S.2d 536 (1970), a New York court addressed a similar issue. There, an agent who wrote insurance for both the Hartford Insurance Company and Aetna Insurance sold an Aetna policy to a driver but erroneously mailed a certificate of insurance showing that Hartford was the insurer. (The agent had authority from Hartford to bind it with such certificates.) The insured allowed the Aetna policy to lapse for nonpayment of the premium, but the Hartford *certificate* of insurance remained on file. An accident occurred while the Hartford certificate was on file, and the "insured" tried to hold Hartford liable for indemnity. The New York court said:

> A certificate of insurance is *not* a contract of insurance. A certificate of insurance, as [the New York financial responsibility law] clearly states, is merely *evidence* that a contract has been issued. At bar, Hartford never issued a contract to Johnson and *Teeter* [a case noting the interest in financial responsibility laws] nor any other authority cited by the appellants even suggests that Hartford is barred from showing that fact. The appellants, in effect, seek to use the certificate of insurance as a basis for independent liability. This cannot be done. The certificate is conditioned upon the issuance and existence of a policy.

*Id.* at 410, 316 N.Y.S.2d at 539 (citations omitted). *Accord Looney v. Allstate Ins. Co.,* 392 F.2d 401, 406–07 (8th Cir.1968) (applying Arkansas law); *Government Employees Ins. Co. v. Employers Commercial Union Ins. Co.,* 62 A.D.2d 123, 125, 404 N.Y.S.2d 652, 653 (1978); *In re Country-Wide Ins. Co.,* 51 A.D.2d 701, 701, 380 N.Y.S.2d 1, 2 (1976); Buckley, *Insurance,* 23 Syracuse L.Rev. 413, 419 (1972).

---

1. Tilley contends that the cancellation procedures required by Iowa Code § 515.80 (1985) were not followed by Home Insurance. That section, however, does not apply to insurance policies such as this, which expire by their own terms. *See Hensley v. Aetna Casualty & Surety Co.,* 200 N.W.2d 552, 553–54 (Iowa 1972); *Hoefler v. Farm & City Ins. Co.,* 193 N.W.2d 538, 539 (Iowa 1972).

We agree with the analysis in *Hill*; the Home Insurance certificate on file with the department was not a contract of insurance. While this certificate is evidence of a policy, there is substantial evidence to support the district court's conclusion that there was not a policy in effect at the time of the accident. We therefore affirm.

AFFIRMED.

All Justices concur except CARTER, HARRIS, McGIVERIN, and LAVORATO, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent. I believe that The Home Insurance Company's subsidiary should be liable to indemnify Ferg's against appellants' dramshop claims under both contractual and estoppel theories.

Unlike the situation presented in *Hill v. Johnson*, 35 A.D.2d 407, 316 N.Y.S.2d 536 (1970), relied on by the majority, Home's subsidiary did have a policy of dramshop insurance in force insuring Ferg's. Although that policy would have expired on November 1, 1984, the insurer, prior to that date, certified that it would continue in force until November 1, 1985. The insurer was aware when it did this that the premium had not been paid for the following year. Under ordinary principles of contract law, this was a voluntary relinquishment by the insurer of its right to avail itself of the policy provision specifying automatic expiration on November 1, 1984. Thereafter, any cancellation for nonpayment of premium should require notice to the insured under Iowa Code section 515.80 (1985).

In addition to the contractual obligations of the insurer, it should also be held liable on a theory of estoppel. The applicable regulations of the Iowa Beer and Liquor Control Commission provide that the effective period of dramshop liability policies must coincide with the period of the insured's license or permit. Cancellation requires a thirty-day, written notice to the commission. 150 Iowa Admin. Code 5.8(1), 5.8(4) (1985).

Correspondence from commission officials included in the record indicates the commission relied on the continued existence of the liability coverage certified by Home's subsidiary in continuing Ferg's liquor license in force beyond November 1, 1984. The majority places no significance on such reliance because another insurance company had also provided the necessary certification to assure continuation of the license. I submit that under the circumstances of the present case it is impossible to conclude that one insurance company's certification was any more instrumental in causing Ferg's liquor license to remain in force than the certification of the other company. Indeed, if Home's subsidiary may prevail on this argument, so, too, may the other insurance company in the event it seeks to present some policy defense notwithstanding its certification of coverage.

I would hold that both insurers are liable on the risk and that the usual rule of pro rata liability for any loss be applied. *See Dairyland Ins. Co. v. Concrete Prods. Co.*, 203 N.W.2d 558, 564 (Iowa 1973).

HARRIS, McGIVERIN and LAVORATO, JJ., join this dissent.